Dani SIEGEL, Plaintiff,

v.

**REALTY EQUITIES CORPORATION OF NEW YORK et al., Defendants.**

No. 70 Civ. 4338.

United States District Court, S. D. New York.

Jan. 25, 1972.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff; Shephard S. Miller, Allan K. Peckel, New York City, of counsel.

Shearman & Sterling, New York City, for Alexander Grant; Robert L. Clare, Jr., John E. Hoffman, Jr., James R. Hawkins, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for Realty Equities, and others; Leon P. Gold, Ira Postel, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiff Dani Siegel brings the within action pursuant to Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b))[1] and SEC Rule 10b–5 (17 C.F.R. § 240.10b–5).[2] The case is before this Court on plaintiff's motion for class determination pursuant to Fed. R.Civ.P. 23 and defendants' cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons cited below, plaintiff's motion for class determination is conditionally granted, and the motions for summary judgment of defend-

---

1. 15 U.S.C. § 78j provides in pertinent part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. 17 C.F.R. § 240.10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

ants Alexander Grant & Company (hereinafter referred to as "Alexander Grant") and its individual partners formerly doing business as Klein, Hinds & Finke, and of defendant Realty Equities Corporation of New York (hereinafter referred to as "REC") and certain of its principal officers and directors are denied.

## FACTS

Plaintiff alleges that from July 24, 1969 to August 3, 1970, defendants REC and certain of its officers and directors issued to the public a series of twelve documents containing material misrepresentations as to the financial condition and results of operations of REC.[3] These financial statements represented that REC had net income of approximately $2,900,000 for the year ending March 31, 1969 and $1,500,000 for the six months ending September 30, 1969. Plaintiff alleges that in fact, however, REC either suffered substantial losses during this period of time or its earnings were substantially lower than reported. During the same period, plaintiff alleges that REC also paid cash dividends in contravention of various agreements with creditors without disclosing that fact, which conduct, he claims, also served to paint a more prosperous picture of REC than was actually the case. Defendants Alexander Grant, a firm of certified public accountants, and Klein, Hinds & Finke, formerly a firm of certified public accountants, all of whose former partners are now partners of Alexander Grant, are alleged to have aided and abetted in the perpetration of the wrongs of which complaint is made.

On August 3, 1970, trading in REC securities was suspended by the American Stock Exchange pending receipt of accurate financial information concerning REC. At present, this suspension is still in effect.

The gravamen of plaintiff's complaint is that, as a result of defendants' unlawful activities, the market prices of REC securities became artificially inflated between July 24, 1969 and August 3, 1970. Thus, plaintiff alleges that he and all the class members who bought REC securities in the open market were misled to their damage by the artificially inflated market prices of those securities at the times of their purchases. Plaintiff himself purchased 1,000 shares of REC common stock on January 15, 1970 at the then-prevailing market price of $10.125 per share. At the time of the filing of this action, the bid and ask price for REC common stock and warrants in the over-the-counter market was $2–¾ bid, $4–⅛ asked and $1 bid, $1–¾ asked, respectively. Therefore, plaintiff seeks to represent those persons who, like himself, purchased securities of REC between July 24, 1969 and August 30, 1970 at prices which were affected by the acts and transactions complained of herein.

---

3. Specifically, plaintiff lists, in his answers to defendants' interrogatories, the following documents which he claims contained misrepresentations regarding the financial condition and results of operations of REC:

(1) Consolidated statement of REC income for the year ending March 31, 1969;

(2) Consolidated balance sheet of REC as of March 31, 1969;

(3) Annual Report for the year ending March 31, 1969;

(4) 10k for the year ending March 31, 1969;

(5) Press release dated July 24, 1969;

(6) Consolidated statement of REC income for the six months ending September 30, 1969;

(7) Consolidated balance sheet of REC as of September 30, 1969;

(8) 9k for the six months ending September 30, 1969;

(9) Registration Statement and Prospectus dated November 25, 1969;

(10) Press release dated December 16, 1969;

(11) Registration Statement and Prospectus dated January 30, 1970; and

(12) Press release dated May 1, 1970.

## MOTION FOR CLASS DETERMINATION

Under Fed.R.Civ.P. 23(a), an action may be maintained as a class action if the following requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Plaintiff seeks to maintain his action under Fed.R.Civ.P. 23(b) (3), which requires, in addition to the four elements cited *supra*, that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. Class Size

■ ■ The class plaintiff seeks to represent numbers several thousand, thereby rendering joinder impracticable. Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). And failure to state the exact number in the proposed class does not defeat a motion for class representation, so long as the proposed class is not "amorphous". Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966). Therefore, I find that the first requirement for maintaining a class action under Rule 23 is satisfied.

### 2. Common Questions of Law or Fact

At this point we come to the heart of defendants' objections to plaintiff's motion for class determination, and the basis for their motions for summary judgment. Defendants' argument centers around the question of reliance. All parties agree that reliance is a necessary element of a private 10b–5 action, but disagree as to its definition. Plaintiff argues that he and the class he seeks to represent relied on the fact that the market price of REC securities had not been artificially inflated by the allegedly false statements issued by the defendants. Defendants, on the other hand, strenuously contend that plaintiff personally must have read at least one of the twelve documents issued by them and been induced by the alleged misrepresentations contained therein to purchase REC securities. They point out that plaintiff cannot ascertain specifically which of the twelve documents in question he read and relied on;[4] thus, they argue, he has stated no individual claim and so cannot possibly represent the class.

In *Green, supra,* a case with facts similar to those at bar, the Second Circuit Court of Appeals held a class action proper where the complaint alleged that plaintiff and his class "relied on the misstatements and omissions in that none were aware the price of the stock had been inflated to an artificially high level by the misleading information." *Green, supra* 406 F.2d at 295.

Although it is true that opinions in this circuit have given lip service to the idea that reliance is a necessary element of a private 10b–5 claim when misrepresentations, rather than omissions, are involved, the cases actually define reliance in terms of causation, *i. e.,* "whether 'the misrepresentation is a substantial factor in determining the course of conduct which results in [the recipient's] loss' ". List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir.), cert. denied, 382

---

4. Plaintiff's Answers to Interrogatories 7 (g), Exhibit C, attached to defendant REC's motion for Summary Judgment:
   "Plaintiff does not specifically recall seeing or reviewing any of the specific documents referred to in the answer to Interrogatories 6 or 7; however he does recall seeing Realty's earnings for the six months ending September 30, 1969, prior to January 15, 1970."

U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). And in Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S. Ct. 913, 25 L.Ed.2d 93 (1970), the court of appeals upheld the trial court's following charge on causation:

> "the plaintiff is required to prove by a fair preponderance of the evidence that he or she suffered damages as a proximate result of the alleged misleading statements and purchase of stock in *reliance* to [*sic*] them. In other words, the plaintiff must show that the misleading statement or omission played a substantial part in bringing about or *causing the damage* suffered by him or her and that the damage was either a direct result or a reasonably foreseeable result of the misleading statement." (Emphasis added.) *Globus, supra* at 1291.

■ It appears to this Court, therefore, that if plaintiff at trial can sustain the difficult burden of proving defendants issued false statements concerning their financial condition and paid dividends in contravention of their agreements with creditors, and that these activities caused the market price of REC securities to be inflated, a jury might find it reasonably foreseeable that such inflated prices would induce the public to purchase REC stock, and subsequently to suffer damages when the misrepresentations were uncovered. In any event, whether such two-step reliance satisfies the causation requirement is a common question of law to be resolved by the trial judge. *See* Dolgow v. Anderson, 43 F.R.D. 472, 491 (E.D.N.Y.1968).

As to common questions of fact, "misrepresentations made over a period of time 'will not preclude a class action, provided they were made pursuant to a common scheme.' " Bernfeld, "Class Ac-

tions and Federal Securities Laws", 55 Cornell L.Rev. 78 (1970), *quoting Dolgow, supra* at 489.

> "Like standing dominoes, . . . one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous statements. Such a possible close causal relationship between the various alleged misrepresentations in . . . [a corporation's] financial statements leads to the conclusion that members of the class are interested in 'common questions of law and fact.' " *Fischer, supra* 41 F.R.D. at 381.

■ Plaintiff herein has alleged a common scheme to artificially inflate the price of REC stock. Unlike cases involving oral misrepresentations (*see, e. g.*, Moscarelli v. Stamm, 288 F.Supp. 453, 462–463 (E.D.N.Y.1968)), all of the alleged misstatements are set forth in documents addressed to the general public rather than to individual shareholders. *Dolgow, supra* 43 F.R.D. at 489. The instant case is one of those alleging "a fraud perpetrated on numerous persons by the use of similar misrepresentations", thereby rendering it "an appealing situation for a class action . . . ." Advisory Committee's Note to New Rule 23, 39 F.R.D. 98, 103 (1966).[5] I find that common issues of fact include at least the existence, character and materiality of the alleged misstatements. If the trial judge should rule in favor of plaintiff's definition of reliance, an additional common question of fact would be whether the alleged misrepresentations caused the market price of REC stock to be artificially inflated, and whether it was reasonably foreseeable that they should do so.

---

5. If, later, the misrepresentations turn out to be diverse, the trial judge can strike the class action. Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966).

### 3. Whether Plaintiff's Claims are Typical of Those of the Class

██ ██ Rule 23(a) (3) does not require that all members of the class be identically situated if there are common questions of law or fact. Defendants point out that the last two documents challenged by plaintiff as containing false statements were issued *after* he purchased his stock in January of 1970. If it is true that the twelve documents issued by defendants are all part of a common scheme to defraud the public, I think plaintiff's claims are typical of his class and that he should be allowed to represent those who purchased REC securities after the last two documents were issued (*Fischer, supra* 41 F.R.D. at 380–381) as well as those who purchased prior to that time. *Green, supra* 406 F.2d at 300. Moreover, if plaintiff's definition of reliance is adopted by the trial judge as a matter of law, he clearly would be a proper representative of those who purchased REC stock in reliance on the fact that it was not artificially inflated.

If, on the other hand, the trial judge should rule that the reliance element requires those seeking recovery actually to have read the alleged misstatements and to have purchased REC stock as a direct result thereof, or it appears to him that a distinction should be made among those who purchased at different times, he is free to create subclasses under Rule 23(c) (4). *See Green, supra* 406 F.2d at 299; *Dolgow, supra* 43 F.R.D. at 489–490. To so divide the class at this juncture would serve no useful purpose.

The Second Circuit, in *Green, supra,* which involved a situation similar to the one presented in the instant case (in that only one plaintiff sued on behalf of a large class and argued for the same definition of reliance as the plaintiff

herein), explicitly approved the procedure followed in Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673 (N.D.Ind.), motion to dismiss denied, 259 F.Supp. 673 (N.D.Ind.1966), judgment for plaintiff after trial, 286 F.Supp. 702 (N.D.Ind.1968), aff'd, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), where the court allowed a 10b–5 suit to proceed as a class action, with the possibility that its order might be amended later to strike the class action or to create subclasses, and disapproved the procedure followed in Richland v. Cheatham, 272 F.Supp. 148 (S.D. N.Y.1967), where a class action was denied with the possibility of reinstating it after it had progressed further: "We believe *Brennan* follows the better route, since once the class action aspect is struck, the litigation is likely to terminate." *Green, supra* 406 F.2d at 298 n. 10. The likelihood of termination is particularly apparent in cases such as this, where only one plaintiff has seen fit to institute an action.

### 4. Adequacy of the Representation

██ One litigant may assert the rights of a class. *Green, supra*; Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). The Court must, however, carefully scrutinize the situation to ascertain whether plaintiff can adequately conduct this litigation on behalf of the class, since all members are bound by the judgment on the merits unless they expressly opt out. Fed.R.Civ.P. 23(c) (2) (B). The fact that no one has sought to intervene in this action is of no consequence. *Green, supra* 406 F.2d at 298; *Eisen, supra* 391 F.2d at 563. No one else may have been injured to such an extent to make it worthwhile for him to undertake the heavy financial burden and responsibility of conducting a 10b–5 action.[6] Moreover,

> "If, as here, the security in connection with which the alleged misrepresentations and violations of 10b–5 have been made is publicly held, a class action may well be the appropriate means for

---

6. If plaintiff can prove his case, his damages would appear to be so small that they would undoubtedly be consumed by attorney's fees. In *Green, supra* 406 F.2d at 296, the Second Circuit noted:

"under the new Rule every member of the class is assured of sharing in a favorable verdict without having to intervene; their failure to come forward is as consistent with the view that they are sitting back, watching the action proceed, content with the job their representatives are doing, as it is with the view that they disapprove of the action." *Dolgow, supra* 43 F.R.D. at 495–496.

Under the circumstances of this case, it would be sensible and efficient to permit plaintiff to set forth the elaborate proof on the common issues of misstatement, materiality, effect on price and so on that any purchaser of REC securities between July 24, 1969 and August 3, 1970 would need in order to succeed on the merits. No claim has been made that plaintiff's counsel are anything but qualified, experienced and generally able to conduct this litigation.

### 5. Common Questions Predominate over Individual Issues

■ Once the court has ascertained that common questions of law or fact exist, in order to allow a class action under 23(b) (3) it must be determined that such common questions predominate over any individual issues. Defendants make much of the fact that, under their theory of reliance, separate trials for each defendant would be necessary on that issue. But if plaintiff's theory of reliance is adopted by the trial judge, this troublesome issue will be a common, rather than an individual, question, rendering separate trials unnecessary, *Dolgow, supra* 43 F.R.D. at 491. I find that the common issues of the existence, character and materiality of the alleged mis-

statements and their effect on market price predominate over the individual issues of damages and, possibly, reliance.

### 6. Superiority of Class Action

■ Rule 23(b) (3) suggests several factors a court might consider in determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factor with the most relevance to this case revolves around the difficulties likely to be encountered in the management of a class action. Although defendants cite Morris v. Burchard, 51 F.R.D. 530 (S.D.N.Y.1971) for the proposition that allowing a class action in a 10b–5 suit in many instances may burden the court with the insurmountable task of trying several thousands of mini-lawsuits on individual issues,[7] I find that reliance on that case is misplaced. *Morris* involved a situation where a disconnected series of *oral* statements were made to various members of the alleged class. Thus, it is true that had it been allowed to proceed as a class action, *Morris* would have necessitated separate trials on the issues of materiality, misrepresentation, reliance and damages. That situation, however, is unlike the case at bar, which involves a series of similar *written* misrepresentations (all involving the earnings and results of operations of REC) contained in documents addressed to the general public. Here these issues (except for damages and, perhaps, reliance) are common ones, which render the maintenance of this action as a class suit superior to other available methods of adjudicating the controversy. The "guiding princi-

---

expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf."

7. *But see Green, supra* 406 F.2d at 299: "Compare Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966) in which the court concluded it could cope with a class action, although the securities in question had been purchased at different times, under varying circumstances, and in response to separate representations, some oral and some written."

ple" in a 10b–5 class action was set forth in *Green, supra* 406 F.2d at 298:

"It cannot be denied that the resolution of the class action issue in suits of this type places an onerous burden on the trial court. But if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."

■ I might mention that this Court is mindful of the concern which has lately arisen over the use of the class action device in a 10b–5 suit. Frequently, shareholders of a corporation institute a class action in a 10b–5 claim similar in nature to the "strike suits" which formerly were widely utilized by disgruntled shareholders in derivative actions. And it is true that in many instances, once a motion for class determination is granted it is more economical for a corporation to settle such a suit before trial rather than to conduct the litigation—regardless of the merits of the plaintiffs' claims. At this juncture, however, it would appear that plaintiff Siegel's action has merit, although it is less clear that he, as opposed to other purchasers of REC stock, has a cause of action under Rule 10b–5 because of the uncertainty in this circuit as to what constitutes reliance. Under Fed.R.Civ. P. 23 as it now stands, however, this Court feels that once it "is convinced that there is substantial merit to plaintiff's claims and that the class action device is the practicable method of vindicating these claims, it will not let procedural difficulties stand in its way." *Dolgow, supra* 43 F.R.D. at 481.

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

■ Defendants' motions for summary judgment pursuant to Fed.R.Civ. P. 56 are both grounded on their theory of reliance: *i. e.,* plaintiff actually must have read at least one of the challenged documents and must have purchased his REC stock as a direct result of reading the alleged misrepresentations contained therein. Defendant REC argues that since plaintiff is unable to specify which of the twelve documents in question he read and relied on in purchasing his REC stock, he has not stated a claim under Rule 10b–5 and thus cannot represent his class. Defendant Alexander Grant asserts that it had nothing to do with the REC September 30, 1969 six-month financials (Hoffman Affidavit ¶ 8) plaintiff states he remembers seeing (although he has not specified exactly where), and thus argues that plaintiff has stated no claim as to them. Alexander Grant, however, on July 21, 1969, did certify REC's financial statements for the year ending March 31, 1969. Peckel Affidavit ¶ 4.

In light of the liberal application of Fed.R.Civ.P. 23, it would be untimely for this Court to decide the reliance issue at this stage of the proceedings. As discussed *supra,* there is substantial authority for the proposition that what constitutes reliance is one of those common questions of law to be determined by the trial judge. Apart from the reliance issue, this case presents issues of fact (*e. g.,* misrepresentation, materiality) which must await trial for determination. Therefore, defendants' motions for summary judgment are denied.

Therefore, and for the foregoing reasons, plaintiff's motion for class determination pursuant to Fed.R.Civ.P. 23 is conditionally granted, and defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56 are denied. Plaintiff will submit an order on notice defining the class he seeks to represent in accordance with this opinion and proposing means for notice to the class pursuant to Fed.R.Civ.P. 23(c) (2).