HAWK INDUSTRIES, INC. et al.,
Plaintiffs,

v.

BAUSCH & LOMB, INCORPO-
RATED, et al., Defendants.

No. 72 Civ. 1177.

United States District Court,
S. D. New York.

May 17, 1973.

Pomerantz, Levy, Haudek & Block, New York City, and Crystal & Driscoll, P. C., for plaintiffs; Stephen Lee Crystal, and Daniel Krasner, New York City, of counsel.

Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., for defendants Bausch & Lomb, Inc. and Daniel G. Schuman; William H. Morris and John Stuart Smith, Rochester, N. Y., of counsel.

Wilkie Farr & Gallagher, New York City, for defendants Faulkner Dawkins & Sullivan and David MacCallum; Louis A. Craco and Michael B. Targoff, New York City, of counsel.

MacMAHON, District Judge.

Plaintiffs move for an order, pursuant to Rule 23(c)(1), Fed.R.Civ.P., and Civil Rule 11A of this court, declaring that this action be maintained as a class action. The motion is granted.

The consolidated complaint alleges that the defendants selectively disclosed and acted upon material non-public information, in violation of Section 10(b) of the Securities Exchange Act, 15 U.S. C. § 78j(b), and Rule 10(b)–5 of the Rules and Regulations of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.

Defendant David MacCallum, a securities analyst and partner at defendant Faulkner Dawkins & Sullivan (Faulkner Dawkins), had studied Bausch & Lomb's stock performance since March 1971. Faulkner Dawkins, based on Mac-Callum's research, had estimated that the earnings per share of that stock would be approximately $1.00 for the quarter ending March 31, 1972. Sometime before March 1972, MacCallum determined that his estimate of Bausch & Lomb's earnings should be revised downward. He met with defendant Daniel G. Schuman, chairman and chief executive officer of Bausch & Lomb, on March 16, 1972, in Rochester, New York. Schuman had been advised earlier that week by his own analysts at Bausch & Lomb that earnings would not be as high as their original estimate. At the March 16 meeting, MacCallum closely questioned Schuman on the different activities of Bausch & Lomb.

When MacCallum left Schuman that morning, at 11:00 A.M., he called his home office in New York City and said that he was revising his earnings estimate of Bausch & Lomb stock to $.60 per share. Immediately after this telephone call, activity in Bausch & Lomb stock on the New York Stock Exchange increased. That afternoon, Schuman, in Rochester, heard rumors that Faulkner Dawkins had been advising its customers that Schuman had given Faulkner Dawkins a revised earnings estimate of $.60 per share. Schuman called Mac-Callum at 2:24 P.M. to inquire about the rumor. MacCallum denied that he had so advised his customers but said that he had revised his own earnings estimate to $.60 per share. Schuman replied that MacCallum's estimate was low compared to Schuman's own figures of $.70 to $.80 per share. Shortly after this telephone call, Schuman again called MacCallum and told him that Bausch & Lomb's estimate was now $.65 to $.75 per share.

When trading closed that day on the New York Stock Exchange, the price of Bausch & Lomb stock had dropped from $131.75 per share at 11:00 A.M. to

$125.25 per share at 3:30 P.M.[1] After 11:00 A.M. the stock rose to a high of $133.75 per share at 11:07 A.M. Trading in the stock was suspended on the New York Stock Exchange on Friday, March 17, 1972, and that same day Bausch & Lomb announced a revised earnings estimate of $.65 to $.75 per share. When trading commenced again on Monday, Bausch & Lomb opened at $110.00 per share. The stock experienced similar drops on the Pacific Coast Stock Exchange, the Philadelphia, Baltimore and Washington Stock Exchange and the Boston Stock Exchange. Trading in the stock was not suspended on these exchanges.

Upon oral argument, counsel for MacCallum and Faulkner Dawkins contended that in order to satisfy the requirements for class action determination plaintiffs must show a probability of success on the merits. This case is an especially alluring one to review the merits of plaintiffs' claim, since there is a dispute as to whether any material non-public information was disclosed by Schuman to MacCallum and, if so, when such information was disclosed. (The time of the alleged disclosure will ultimately define the limits of the class.)

■ Defendants argue that since Schuman and MacCallum did not discuss any estimated earnings figures until 2:30 P.M., there was no actionable disclosure, if at all, before that time and therefore that the class could only encompass those who purchased subsequent to that conversation. Plaintiffs do not contend that the estimated earnings figures were discussed before 2:30 P.M. but rely on a totality of circumstances argument to establish a disclosure of material non-public information at 11:00 A.M. It is not necessary now to make any determination of the substantive factual issue, although it is reasonable to require a minimal demonstration that the complaint is not frivolous.

Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973); Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir. 1971); Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa.1971); 3B J. Moore, Federal Practice ¶ 23.45[3], at 23–804, ¶ 23.02–2, at 23–157 (2d ed. 1969). See also Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U. S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ Plaintiffs conceded on argument that their claim must fail if the putative class were not all those who purchased after 11:00 A.M. We see no reason why plaintiffs should not have a chance to substantiate their claims that material non-public information was disclosed to MacCallum at 11:00 A.M., otherwise both parties would be deprived of an opportunity to have a full exposition of the merits of this claim. Mersay v. First Republic Corp. of America, 43 F. R.D. 465, 469 (S.D.N.Y.1968). Since plaintiffs allege that the disclosure occurred at 11:00 A.M., the putative class consists of all those who purchased shares of Bausch & Lomb stock after that hour.

Defendants' opposition to class action determination is based mainly on the assumption that if there were a disclosure, it was not made until 2:30 P.M. Hence, much of their argument is inapposite to class action determination since the putative class is alleged to be all those who purchased after 11:00 A.M.

■ If plaintiffs fulfill the requirements of Rule 23, Fed.R.Civ.P., the motion should be granted. That rule requires a showing that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, (4) the representative parties will fairly and adequately protect the interests of the

1. See New York Stock Exchange sales sheet for Bausch & Lomb, March 16, 1972.

class, and (5) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); 3B J. Moore, Federal Practice ¶ 23.02–2, at 23–156.

■ There were approximately 574 transactions in Bausch & Lomb shares on the New York Stock Exchange after 11:00 A.M. on March 16, 1972. The number of actual traders is undoubtedly less than the number of transactions, but the number of transactions is sufficient indication that the number of potential class members is large enough to satisfy the numerosity requirement. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968). Plaintiffs estimate the number in the potential class at 400 to 500. Furthermore, since the stock is also traded on the Pacific Coast Stock Exchange, the Philadelphia, Baltimore and Washington Stock Exchange and the Boston Stock Exchange, there is good reason to expect that members of the class are widely scattered. See Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972).

■ Counsel for Schuman and Bausch & Lomb admits in his affidavit in opposition to this motion that "[i]f the class be determined to be those who placed orders to purchase after 2:30 P. M. on March 16, 1972, there admittedly would be some questions of fact and law common to members of the class." There is no reason to suppose that the admission is not equally applicable to the putative class of those who purchased after 11:00 A.M. Whatever de-

fendants' position, the issues of whether a selective disclosure of material non-public information occurred and, if so, when it occurred, are questions common to the class. See Korn v. Franchard Corp., *supra*, 456 F.2d at 1213 n. 18.

Plaintiffs, Hawk Industries and Jack Deutschman, allege that they purchased stock at a price of $127.00 and $127.50. The price indicates that these transactions must necessarily have taken place after 11:00 A.M.[2] These plaintiffs, therefore, are clearly within the class.[3]

■ Bausch & Lomb and Schuman contend that plaintiff Deutschman, a securities analyst, may have a conflict with other members of the class because "[a] central aspect of this litigation is a definition of the appropriate relationship between financial analysts and publicly owned corporations," and Deutschman, as an analyst, may assume a position on that issue which may "differ substantially from that of an individual and independent investor."[4] Counsel does not expatiate on this potential conflict. Since the class may be altered before a decision on the merits, there is no reason to bar a class determination because of a speculative conflict of interest. Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 566; Rule 23(a), Fed. R.Civ.P. Moreover, no such conflict is posited for plaintiff Hawk Industries.

Hawk Industries and Deutschman will fairly and adequately protect the interests of the class. See Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 562–563; Feder v. Harrington, 52 F.R.D. 178, 183 (S.D.N.Y.1970). It is contended, however, that co-counsel for plaintiffs, Pomerantz, Levy, Haudek & Block, is also counsel in a derivative suit on behalf of

2. *Id.*

3. Plaintiffs Robert F. Runyon, Rubin Shapiro and Mollie Shapiro may not be

within the class, but we need not determine that here.

4. Affidavit of William H. Morris, counsel for Schuman and Bausch and Lomb.

Bausch & Lomb in the state court and that this may pose a conflict. That suit has evidently been dismissed as to all defendants except Bausch & Lomb.[5] While the derivative suit is pending, however, even against a nominal defendant, the firm of Pomerantz, Levy, Haudek & Block has a conflict of interests.

Relying on Heilbrunn v. Hanover Equities Corp., 259 F.Supp. 936 (S.D.N.Y. 1966), co-counsel argues that there is no conflict. This is a different case from *Heilbrunn*, however, where the complaint contained a derivative action and, in the alternative, an action for damages under the anti-fraud provisions of the securities law.

In *Heilbrunn*, alternative or inconsistent pleadings allowable under Rule 8, Fed.R.Civ.P., could lead to only one recovery based on one or the other alternative claims. The proof would determine on what basis relief would be granted, and counsel could vigorously pursue any line of evidence which would result in recovery.

Here, however, co-counsel is bound to pursue two actions to the best of his ability and as vigorously as possible. If both are successful, one action would result in a recovery for the corporation; the other would result in a detriment to the corporation. It is difficult to see how counsel could retain his independence of professional judgment and loyalty to his clients and their interests in both suits. Ruggiero v. American Bioculture, Inc., 56 F.R.D. 93 (S.D.N.Y.1972). See also Emle Industries, Inc. v. Patantex, Inc., 478 F.2d 562 (2d Cir., 1973). While the firm of Pomerantz, Levy, Haudek & Block is counsel for a plaintiff suing derivatively on behalf of Bausch & Lomb in the state court, it cannot furnish adequate representation to the plaintiff class here. It is, therefore, estopped from acting as co-lead counsel in this case. This, however, does not bar a class determination

since co-lead counsel, Crystal And Driscoll, P.C., has no such conflict and there is no reason to suppose that it cannot adequately represent the legal interests of the plaintiff class.

Defendants contend that individual issues of materiality of disclosures, causation, reliance and damages predominate over the common issues. Proof of reliance is no longer a prerequisite to recovery in a 10(b)–5 case involving nondisclosures, and causation is established by the allegations of materiality and omission. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, rehearing denied, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692, 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, at pp. 374, 375 (2d Cir., 1973); Cohen v. Franchard Corp., 478 F.2d 115, at p. 124 (2d Cir., 1973); Shapiro v. Merrill Lynch, Pierce, Fenner & Smith Inc., 353 F. Supp. 264 (S.D.N.Y.1972). Even prior to these last cited cases, defendants' argument would have had little chance of prevailing. See Green v. Wolf Corp., *supra*, 406 F.2d at 301; Feder v. Harrington, *supra*, 52 F.R.D. at 183; Mersay v. First Republic Corp. of America, *supra*, 43 F.R.D. at 471.

Finally, a class action is the best method for determination of the substantive issues. Litigation of this sort is commonly determined by means of a class action. Green v. Wolf Corp., *supra*, 406 F.2d at 301; Mersay v. First Republic Corp. of America, *supra*, 43 F. R.D. at 471.

Plaintiffs claim that the damages are approximately $20.00 per share. Plainly, many small investors, purchasers of 100 or 200 shares, while clearly not without means, have not suffered sufficient damages to warrant an individual action. Those purchasers will have no viable recourse if this motion is

---

5. See the reply affidavit of Stephen Lee Crystal, para. 2.

denied. Korn v. Franchard Corp., 456 F.2d at 1214.

We find, therefore, that this action may be maintained as a class action under Rule 23(b)(3), Fed.R.Civ.P. We direct plaintiffs to give individual notice of the pendency of this action to all members of the class who can be identified through reasonable effort. Counsel asserted, on oral argument, that for the most part the members could be identified. Under such circumstances, notice by mail is the best notice.

The notice shall advise each member that the court will exclude him from the class if he so requests within two (2) months of the receipt of notice; that the judgment, whether or not favorable to the class, shall include all members who do not request exclusion; and that any member who does not request exclusion may enter an appearance through his counsel. The cost of such notice shall be borne by the plaintiffs. Rule 23(c)(2), Fed.R.Civ.P.; Eisen v. Carlisle & Jacquelin, supra, 391 F.2d at 568; Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir., 1973).

The form of notice,[6] with notice to defendants, shall be submitted to the court for approval within ten (10) days. The court will consider notice to those members who cannot be identified after plaintiffs have identified as many of the members as possible.

Accordingly, plaintiffs' motion for determination of a class consisting of all persons who purchased Bausch & Lomb stock after 11:00 A.M. and before 4:00 P.M. on March 16, 1972 is granted. Notice to the class shall be given by the plaintiffs, as set forth above, and the cost of the notice shall be borne by the plaintiffs.

So ordered.

6. Plaintiffs are directed to Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971), for the form of the notice.