**David WERFEL, Plaintiff,**

v.

**Werner H. KRAMARSKY et al.,
Defendants.**

**No. 73 Civ. 2178-LFM.**

United States District Court,
S. D. New York.

Jan. 31, 1974.

Stull & Stull, New York City, for plaintiff; Robert A. Stull, New York City, of counsel.

Shea Gould Climenko & Kramer, New York City, for defendants Morris Karp, Joseph P. Leuzzi, Richard J. Lax, Seymour N. Goldsmith, C. Robert Roll and

Ernest Liss; Ira Postel, New York City, of counsel.

Shearman & Sterling, New York City, for defendants Alexander Grant & Company and Klein, Hinds & Finke; James R. Hawkins, New York City, of counsel.

Burgoyne Michels Rose & Williamson, New York City, for defendant Realty Equities Corp.; Graham S. Rose, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff moves for an order, pursuant to Rule 23(c)(1), Fed.R.Civ.P., and Civil Rule 11A of this court, declaring that this action may be maintained as a class action. Defendants cross-move, under Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the first count of the complaint insofar as it asserts a claim under § 14(a) of the Securities Exchange Act of 1934 (the Act), 15 U.S.C. § 78n, and dismissing the second count of the complaint, or, in the alternative, for partial summary judgment. We turn, first, to the dismissal motions.[1]

Plaintiff is a former warrantholder of Realty Equities Corporation of New York (REC). He sues on behalf of the class of REC warrantholders who purchased their warrants between April 1, 1968 and August 3, 1970, and, derivatively, on behalf of REC, to recover damages for defendants' violations of §§ 10(b) and 14(a) of the Act, 15 U.S.C. §§ 78j and 78n, and S.E.C. Rules 10b–5 and

14a–1 to 14a–12, 17 C.F.R. §§ 240.10b–5 and 240.14a–1 to 240.14a–103.

Defendants are officers and directors of REC, REC's accounting firm and its predecessor. Plaintiff alleges that defendants, from April 4, 1968 to August 3, 1970, disseminated, pursuant to a common scheme, annual and quarterly reports, financial statements, proxy statements and other written material which falsely represented that REC had large net earnings and net income and was experiencing substantial growth and would continue to do so. Plaintiff alleges that he and other class members relied on these statements in purchasing their warrants during this period. In fact, plaintiff claims, REC was suffering heavy losses ($13,000,000 in 1970), and, when the truth came to light, the American Stock Exchange suspended trading in REC shares and warrants, destroying their value and injuring plaintiff, the class and the corporation.

■ Defendants first seek to dismiss that part of the first count of the complaint which asserts a claim under § 14(a) of the Act.[2] This section makes it unlawful for any person to solicit proxies in violation of the proxy rules promulgated by the Securities and Exchange Commission. There can be no doubt that a violation of § 14(a) gives rise to a private right of action by an injured investor. J. I. Case Co. v. Borak, 377 U.S. 426, 430–431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Defendants contend, however, that since plaintiff, as a mere warrantholder, had no voting

---

1. The parties have submitted affidavits to the court supporting their positions on the motion to dismiss. Ordinarily, this would necessitate treating the motion as one for summary judgment, Rule 12(b), Fed.R.Civ. P., but we believe the complaint is a sufficient basis for decision, and, therefore, we elect to exclude the affidavits and treat this motion as a motion to dismiss for failure to state a claim upon which relief can be granted.

2. Section 14(a), 15 U.S.C. § 78n(a), provides: "It shall be unlawful for any person,

by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title."

rights in REC, he has no standing to sue under § 14(a).

■ The clear purpose of § 14(a) of the Act is to give true vitality to the concept of corporate democracy. Medical Comm. for Human Rights v. Securities and Exchange Comm'n, 139 U.S. App.D.C. 226, 432 F.2d 659, 676 (1970), vacated as moot 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970), the Supreme Court commented:

> "The provision was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.' " [3]

See, Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66, 96 (E.D.N.Y.1969).

It was this clear statutory purpose, when read in light of the long-established rule that a breach of a statutory duty normally gives rise to a right of action by the class of persons sought to be protected by the statute, that led to the creation of a private right of action under § 14(a). Dann v. Studebaker-Packard Corp., 288 F.2d 201, 208–209 (6th Cir. 1961); Restatement of Torts 2d, § 286 (1965). Private enforcement of the proxy rules also acts as a necessary supplement to action by the Securities and Exchange Commission. J. I. Case Co. v. Borak, *supra*, 377 U.S. at 432, 84 S.Ct. 1555.

■ Plaintiff here, however, never had any voting rights in REC and is not a member of the class of stockholders congress sought to protect when it enacted § 14(a). Since plaintiff has no corporate voting rights, a violation of § 14(a) cannot interfere with his free exercise of those rights. Thus, the rationale supporting the private right of action does not extend to plaintiff.[4]

Plaintiff cites no case, and our research reveals none, where a non-voting shareholder was found to have standing to sue under § 14(a). We think it clear that neither congress nor the Supreme Court meant to extend the private right of action under § 14(a) to a non-voting shareholder.[5] The first count of the complaint, therefore, must be dismissed to the extent that it purports to assert a claim under § 14(a) of the Act.

■ Defendants also move to dismiss plaintiff's derivative count, which seeks to recover the damages suffered by REC as a result of defendants' alleged violations of the securities laws. They argue that plaintiff was not a shareholder of REC at the time of the commencement of this action and therefore lacks standing to sue derivatively. We agree.

According to the complaint, plaintiff's REC warrants expired on February 1,

---

3. See also, Securities and Exchange Comm'n v. Transamerica Corp., 163 F.2d 511, 518 (3d Cir. 1947), cert. denied, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 418 (1948): "It was the intent of Congress to require fair opportunity for the operation of corporate suffrage." Loss, The SEC Proxy Rules in the Courts, 73 Harv.L.Rev. 1041, 1059 (1960): "The remedy is based . . . on the premise that either side in a contested solicitation has a legitimate interest, in view of the statutory purpose to cry 'foul' against the other."

4. Cf. Comment f. to Restatement of Torts 2d, § 286 (1965): "A statute, ordinance or administrative regulation may, because of its title, preamble, detailed provisions, history, or other reasons, be found to be intended for the protection of the interests of only a particular class of persons. If so, a violation of the provision will be held to be negligence toward persons who are included within the particular class, *but not toward those who do not fall within it*." (Emphasis added.)

5. Since plaintiff alleges damage to REC as a result of the proxy violation, he might be able to bring an action under § 14(a) derivatively, if he could otherwise establish standing to represent the corporation. J. I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

1972,[6] and the complaint was not filed until May 16, 1973. Thus, even were we to hold that a warrantholder has standing to bring a derivative suit,[7] plaintiff was neither a shareholder nor a warrantholder at the time this suit was commenced.

■ Rule 23.1, Fed.R.Civ.P., does not expressly require that a derivative plaintiff be a shareholder at the time of suit. Such a requirement is implied by the rule, however, since it deals with actions "brought by 'one or more shareholders. . . .'" deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1227 (10th Cir. 1970); 3B J. Moore, Federal Practice ¶ 23.1.17 at 23.1–151 (2d ed. 1969). The cases under the rule clearly establish that one who does not own shares in a corporation at the time a suit is filed is not qualified to bring a derivative action on its behalf. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 735–736 (3d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); de-Haas v. Empire Petroleum Co., *supra* 435 F.2d at 1227; Watson v. Button, 235 F.2d 235, 236–237 (9th Cir. 1956); Marco v. Bank of New York, 272 F. Supp. 636, 656–657 (S.D.N.Y.1967), aff'd, 398 F.2d 628 (2d Cir. 1968); Herman v. Steadman, 50 F.R.D. 488, 489–490 (S.D.N.Y.1970); 13 W. M. Fletcher, Private Corporations § 5972 at 405–06 (rev. and perm. ed. 1970); H. W. Ballantine, Corporations 350 (2d ed. 1946).[8]

The "timber of sound reason" supporting this requirement is that equity permits only shareholders to sue on behalf of the corporation because they have a "proprietary interest in the corporate enterprise" and consequently receive an indirect benefit from any corporate recovery. Kauffman v. Dreyfus Fund, Inc., *supra*, 434 F.2d at 735–736; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 321, 56 S.Ct. 466, 80 L.Ed. 688 (1936). A person such as plaintiff, however, who is no longer a shareholder of the corporation, has no such proprietary interest and thus has no standing to sue derivatively. Therefore, since plaintiff lacks standing to bring a derivative suit on behalf of REC, the second count of the complaint must be dismissed.

We turn, now, to plaintiff's motion for a class determination.

This is the second class action brought by a REC warrantholder in this court against these defendants alleging violations of the securities laws. Bergen v. Kramarsky, 71 Civ. 5439, was transferred to us by Judge Brieant following class action determination.[9] The class sought to be represented here is identical to the *Bergen* class, and, since we have decided to dismiss the § 14(a) and derivative claims asserted in the complaint, the allegations in this case are now identical to those in *Bergen*. Although we are not bound by Judge

---

**6.** Paragraph 19.

**7.** Since we find Rule 23.1 reguires a derivative plaintiff to be a shareholder at the institution of suit, we do not reach this issue. See, however, 15 U.S.C. § 78c(a)(10) and (11).

**8.** The New York law is in accord. N. Y. Business Corporation Law § 626(b) (McKinney's Consol.Laws, c. 855, 1963); Gleicher v. Times-Columbia Distributors, Inc., 283 App.Div. 709, 128 N.Y.S.2d 55 (1st Dep't 1954); Miller v. Miller, 256 App.Div. 846, 9 N.Y.S.2d 448 (2d Dep't), aff'd, 280 N.Y. 716, 21 N.E.2d 212 (1939): "It has been repeatedly held that to bring a representative action against a corporation plaintiff must

show that she is a stockholder at the time the action is instituted." 256 App.Div. at 846, 9 N.Y.S.2d at 449; Harris v. Averick, 24 Misc.2d 1039, 204 N.Y.S.2d 372 (Sup.Ct. Spec. Term 1960). Cf. Tenney v. Rosenthal, 6 N.Y.S.2d 204, 210, 189 N.Y.S.2d 158, 160 N. E.2d 463 (1959).

**9.** Siegel v. Realty Equities Corp. of N. Y., 70 Civ. 4338, was a class action brought on behalf of REC common stockholders. Judge Tenney conditionally granted plaintiff's motion for class determination on January 25, 1972, 54 F.R.D. 420 (S.D.N.Y.1972), and after the case came to us under the individual assignment system, it was settled and the settlement was approved by the court.

Brieant's ruling on *Bergen's* class determination motion, we think it would be anomalous to deny class status here when it was granted in *Bergen* on virtually identical facts.[10]

If plaintiff can satisfy the requirements of Rule 23(a) and (b)(3), the motion for class determination should be granted. Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968) (*Eisen II*); Hawk Industries, Inc. v. Bausch & Lomb, Inc., 59 F.R.D. 619, 622–623 (S.D.N.Y.1973).

To fulfill the requirements of Rule 23(a), plaintiff must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claim of the representative party is typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a)(1)–(4).

■ Although the number of members of the class is unknown, the complaint alleges that the warrants were convertible into 1,700,000 shares of REC common stock. Thus, even if each member of the class owned, as did plaintiff, 100 warrants, there would be 17,000 possible plaintiffs, clearly too many to be joined practicably. Even if the class is as small as 2,000 members, the numerosity requirement would be "easily met." Green v. Wolf Corp., *supra*, 406 F.2d at 298; see also, Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (class of 212 individuals held sufficient); Hawk Industries, Inc. v. Bausch & Lomb, Inc., *supra*, 59 F.R.D. at 623 (400 to 500 members); Swanson v. American Consumer Industries, Inc., 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (class of 40 stockholders).

■ The common issues of law and fact in this case include, as Judge Tenney said in Siegel v. Realty Equities Corp. of N. Y., 54 F.R.D. 420, 425 (S.D.N.Y.1972), "at least the existence, character and materiality of the alleged misstatements." Plaintiff alleges a common scheme to inflate the price of REC warrants artificially. Such a common scheme has been held to be a common question under Rule 23(a)(2). Green v. Wolf Corp., *supra*, 406 F.2d at 300.

■ Defendants argue that plaintiff's claim is not typical of the claims of the class, Rule 23(a)(3), because (1) since plaintiff purchased his warrants on January 2, 1970, his claim differs from those who purchased before him and (2) plaintiff did not rely on any of defendants' alleged misstatements when he purchased his warrants and, therefore, does not have a valid 10b–5 claim. These arguments also raise questions as to whether plaintiff will be an adequate representative of the class. Rule 23(a)(4).

Essentially, plaintiff alleges that the misstatements made by defendants, although they appeared at different periods of time, were made pursuant to a common scheme and represented that REC was a healthy, growing, profitable company. Of course, different members of the class may have relied on different reports and statements when they purchased their warrants, but all purchased believing REC was a profitable company, an assumption which plaintiff claims was created by defendants' fraudulent scheme. Since plaintiff also purchased in reliance on the impression created by the scheme (as he alleges in his complaint), his claim is typical of the claims of the class. Green v. Wolf Corp., *supra*, 406 F.2d at 299; see, Mersay v. First Republic Corp. of America, 43 F.R.D. 465, 468–469 (S.D.N.Y.1968).

---

10. On September 22, 1972, Judge Brieant ordered plaintiff in *Bergen* to submit to him an order defining the class he sought to represent. Plaintiff has never complied with Judge Brieant's direction.

■ Defendants assert that plaintiff's deposition shows that he did not rely on any alleged false statements made by them. The deposition is not before us, but, we think that given such a flat admission, a serious issue of fact still remains which should be resolved at trial. As we discussed above, plaintiff claims reliance not on any particular false report or statement, but on the false impression created by defendants' alleged scheme to inflate the price of REC warrants.

Moreover, we doubt that proof of actual reliance, as in a common law action for deceit, is necessary in a 10b–5 action for damages. Cohen v. Franchard Corp., 478 F.2d 115, 124 (2d Cir. 1973). Rather, what plaintiff must show is causation. That is, plaintiff must show "that the misleading statement or omission played a substantial part in bringing about or causing the damage suffered" by plaintiff. Globus v. Law Research Serv., Inc., 418 F.2d 1276, 1291 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S. Ct. 913, 25 L.Ed.2d 93 (1970). It is enough if the fraudulent conduct is "an essential link in the accomplishment of the transaction." Mills v. Electric Auto-Lite Co., supra, 396 U.S. at 385, 90 S.Ct. at 622 (§ 14(a)); cf. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (Rule 10b–5).

■ Reliance in 10b–5 cases is defined as a showing "that the conduct of the defendant actually caused the plaintiff's injury." List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir. 1965). As Judge Tenney, in Siegel, and Judge Brieant, in Bergen, have held, this requirement would be satisfied here by a showing that defendants' scheme caused the price of REC warrants to be artificially inflated, thereby inducing plaintiff to purchase them and suffer damages. Siegel v. Realty Equities Corp. of N. Y., supra, 54 F.R.D. at 425; Bergen v. Kramarsky, supra, at 6–7; Green v. Wolf Corp., supra, 406 F.2d at 295.

Plaintiffs must "fairly and adequately protect the interests of the class." Rule 23(a)(4). Counsel for plaintiff must be experienced and generally able to conduct the litigation, and plaintiff must not have any interests antagonistic to those of the class. Eisen II, supra, 391 F.2d at 562. Plaintiff appears to have no interests antagonistic to those of the class.

■ Defendants, however, challenge the competency of plaintiff's attorney. They cite counsel's failure to comply with Judge Brieant's direction to submit an order defining the class sought to be represented by plaintiff in Bergen. Defendants also claim, over plaintiff's counsel's vigorous denial, that he incorrectly informed plaintiff, Mr. Werfel, that he was not a member of the class in Bergen.

We think plaintiff's attorney is competent to proceed with this litigation. He has had ten years' experience in securities cases involving class plaintiffs. On oral argument, counsel represented to us that Bergen has not gone forward because plaintiff is unwilling to pay the cost of notice to the class. As to the alleged misrepresentation made to plaintiff, we hesitate, short of a plenary hearing, to find that counsel deliberately misstated the facts to his client in the face of his vehement denial. If, at any time, it should appear that Stull & Stull will not provide effective representation to the class, the court can order substitution of other counsel.

We conclude that plaintiff and his counsel will fairly and adequately protect the interests of the class and that plaintiff has satisfied the requirements of Rule 23(a).

■ Plaintiff must also meet the requirements of Rule 23(b)(3) if his motion for class determination is to be granted. Thus, we must find:

"that the questions of law or fact common to the members of the class predominate over any questions af-

fecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

We agree with Judge Brieant and Judge Tenney that the common questions of law and fact, including the existence, character and materiality of the alleged misrepresentations made by defendants and their effect on the market price of REC warrants, predominate over the individual issues of damages and, possibly, causation. Siegel v. Realty Equities Corp. of N. Y., *supra*, 54 F. R.D. at 427; Bergen v. Kramarsky, *supra*, at 9; see, Korn v. Franchard Corp., *supra*, 456 F.2d at 1212–1213; Green v. Wolf Corp., *supra*, 406 F.2d at 301. Trial of individual issues, if necessary, can await the determination of common questions. Green v. Wolf Corp., *supra*, 406 F.2d at 301.

■ Defendants argue forcefully that this action is likely to prove unmanageable. The warrants in question are bearer instruments, transferable merely by delivery. Thus, the identity of the members of the class is unknown and no list of potential plaintiffs exists. Therefore, defendants claim, individual notice to the class will be impossible. They point to Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir.), cert. granted, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973) (*Eisen III*), claiming that there, under precisely the same circumstances, the Court of Appeals dismissed the action as a class action. 479 F.2d at 1017–1018.

It appears, however, that this case may not be like *Eisen III*. Identifica-

tion of the class members may be possible and plaintiff is willing, if ordered, to pay the cost of individual notice to each class member. Plaintiff's counsel has determined that the identity of the holders of REC warrants during the critical period can be ascertained by communication with the members of the American Stock Exchange. Correspondence by counsel with the director of the Exchange's legal division reveals that the Exchange would encourage cooperation by its members with plaintiff's efforts. Such cooperation could certainly be buttressed by the ample subpoena powers available to plaintiff. Of course, if manageability problems become insuperable, the court may order the action dismissed as a class action. However, at this time, we cannot say that this action will prove to be unmanageable. Compare, United Egg Producers v. Bauer Int'l Corp., 312 F.Supp. 319 (S.D.N.Y. 1970) (class of all egg consumers in the United States held unmanageable).

■ A class action is superior to other available methods of adjudicating this controversy. As in most 10b–5 actions, the total damages sustained by most class members here is hardly sufficient to justify an individual action. Thus, if this case does not go forward as a class suit, the injuries suffered by many members of the class will go unredressed.[11] Rule 23(b)(3)(A); Green v. Wolf Corp., *supra*, 406 F.2d at 301; *Eisen II*, *supra*, 391 F.2d at 566–567; Escott v. Barchris Constr. Corp., 340 F.2d 731 (2d Cir. 1965); Hawk Industries, Inc. v. Bausch & Lomb, Inc., *supra*, 59 F.R.D. at 624–625; Mersay v. First Republic Corp. of America, *supra*,

---

11. "[O]ften the superiority of the representative action is found in the fact that it is the only practicable means for class members to receive judicial consideration of their grievance. A major contribution of the common-question class suit is that it enables persons whose individual injuries may have been small to pool their resources in order to wage an effective legal fight for the vindictation of their rights.

The importance of this contribution is most clearcut where the rights sued upon are statutory, so that the public policy in favor of their judicial enforcement has been formally expressed in legislation." 3B J. Moore, Federal Practice ¶ 23.45[3] at 23–807–808 (2d ed. 1969).

43 F.R.D. at 471. Furthermore, if this case proceeds as an individual action, some class members might decide to bring their own actions, thus needlessly wasting judicial time and energy and exposing defendants to not one but many actions.

We find, plaintiff having met the requirements of Rule 23(a) and (b)(3), that this action may be maintained as a class action, the class to consist of all persons who purchased REC warrants between April 1, 1968 and August 3, 1970.

 Finally, we come to the question of notice. The recent holding of the Court of Appeals in *Eisen III* is clear and unambiguous:

> "If identification of any number of members of the class can readily be made, individual notice to these members must be given and [plaintiff] must pay the cost. If this cannot be done, the case must be dismissed as a class action." 479 F.2d at 1015; *Eisen II, supra,* 391 F.2d at 568–569.

Plaintiff attempts to circumvent the *Eisen* requirement of individual notice by (1) urging us to await the decision of the Supreme Court in *Eisen* and (2) arguing that the class has waived individual notice. We decline to stay our decision pending the Supreme Court's action, thus possibly delaying this litigation indefinitely.

Plaintiff directs our attention to the fine print on the reverse side of the REC warrants, which states that in case of reorganization of the corporation, further issuance of common stock, termination of the warrantholders' purchase rights, or other matters affecting their rights, warrantholders are entitled only to publication notice from the corporation. Plaintiff urges us to dispense with the requirement of individual notice because the members of the class

have waived such notice with regard to their warrant rights vis-a-vis the corporation. We reject plaintiff's argument on two grounds.

First, the agreement of the class to publication notice as to certain corporate actions affecting their warrants cannot be said to be a waiver of the Rule 23(c)(2) requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." This lawsuit could hardly have been contemplated by the class members when they waived individual notice from the corporation. In short, the waiver as to the corporation is simply irrelevant to the question of notice in this lawsuit.

Moreover, we have grave doubts whether such a waiver would be effective. Since the rule provides that all class members who do not request exclusion from the class will be bound by the judgment, the requirement of individual notice has important due process connotations.[12] The command of Rule 23(c)(2), as interpreted by our Court of Appeals in *Eisen III,* is clear: individual notice must be given to all class members who can be identified. We direct plaintiff to give individual notice to the class and to pay the cost of notice. *Eisen III, supra,* 479 F.2d at 1015; *Eisen II, supra,* 391 F.2d at 568.

The notice shall advise each class member that if he so requests, within two months from the receipt of notice, he will be excluded from the class; that the judgment, favorable to the class or not, will bind all members who do not request exclusion and that any member who does not request exclusion may appear through his counsel. The form of notice, as set forth in Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa. 1971), will be submitted to the court for approval.

---

12. The Court of Appeals has twice indicated that notice by publication is not sufficient.

See Eisen III, *supra,* 479 F.2d at 1019; *Eisen II, supra,* 391 F.2d at 569.

684

The parties are directed to submit an order, pursuant to Rule 42(a), Fed.R. Civ.P., consolidating this case with Bergen v. Kramarsky, 71 Civ. 5439, it appearing that these actions are now virtually identical.

Accordingly, defendants' motions to dismiss the first count of the complaint insofar as it asserts a claim under § 14(a) of the Securities Exchange Act and to dismiss the second count of the complaint are granted. Plaintiff's motion for class determination is granted, and plaintiff is directed to give individual notice to the class.

Settle an order, not inconsistent with this opinion, on or before February 15, 1974.

