725 F.2d 204
 Fed. Sec. L. Rep. P 99,623
Oliver DeGray VANDERBILT, individually, and Oliver DeGray
Vanderbilt, individually and as trustee, Madelon
* V. Peck, Charles S. Peck, Anne P. McNicholas
and John C. Baity, as trustee, partners, trading as
Vanderbilt & Company, derivatively on behalf of Geothermal
Resources International, Inc., Appellants,
C. Clay Noah (intervenor)
v.
GEO-ENERGY LIMITED, E. J. Lavino and Company, Edward J.
Lavino, II individually and as a trustee, Ronald P. Baldwin,
George L. Barnes, Dominic J. Falcone, Robert R. Twiford,
Geothermal Resources International, Inc., and Thomas F.
Bole, Appellees.
 No. 83-1160.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1983.
Decided Dec. 28, 1983.
 
 Harold E. Kohn (argued), Robert J. LaRocca, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for intervenor appellant C. Clay Noah.
 Lawrence T. Hoyle, Jr., Carole E. Handler, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants.
 E. Barclay Cale, Jr., Marc J. Sonnenfeld (argued), Jami Wintz McKeon, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee Geothermal Resources Intern., Inc.
 Matthew J. Broderick, Arthur H. Rainey, Jeffrey G. Weil, Dechert, Price & Rhoads, Philadelphia, Pa., for appellees Geo-Energy Ltd., E.J. Lavino and Co., Edward J. Lavino, II, individually and as a trustee, Ronald P. Baldwin, George L. Barnes, Dominic J. Falcone, Robert R. Twiford and Thomas F. Bole.
 Before WEIS, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 Appellants/plaintiffs appeal from two separate orders of the district court dismissing this derivative action. The district court's interlocutory order of October 18, 1982 dismissed Oliver DeGray Vanderbilt's and Vanderbilt & Company's complaint because the district court found that these plaintiffs were not fair and adequate representatives of the shareholder class. This same order also granted C. Clay Noah's motion to intervene as a derivative plaintiff. In a subsequent order of February 8, 1983 the district court dismissed Noah's complaint for the same reason it had dismissed Vanderbilt's complaint; it concluded that Noah also was not a fair and adequate representative. On appeal, plaintiffs contend that the district court abused its discretion in finding Vanderbilt and Noah inadequate representatives of the shareholder class. We agree and will reverse the district court's orders accordingly.
 
 FACTS
 
 2
 Oliver DeGray Vanderbilt and Vanderbilt & Company commenced this suit as a derivative action[1] on behalf of Geothermal Resources International, Inc. ("GRI"). Oliver DeGray Vanderbilt, along with the other original individual plaintiffs, is a partner of Vanderbilt & Company, a Pennsylvania partnership that owns stock in GRI. Vanderbilt is also an individual shareholder. Together, Oliver DeGray Vanderbilt ("Vanderbilt") and Vanderbilt & Company own 50,000 shares, or approximately one-and-one-half percent of GRI's total outstanding common stock.
 
 
 3
 In his complaint Vanderbilt charged that GRI's Board of Directors and its two parent corporations engaged in a scheme of self-dealing in GRI's assets to the detriment of GRI and its minority shareholders. Vanderbilt named five members of GRI's seven-member Board of Directors as defendants. Vanderbilt also named Geo-Energy Limited ("GEL") and E.J. Lavino and Company ("EJL") as corporate defendants. GEL owns about 80% of GRI's common stock, and GEL is wholly owned by EJL.
 
 
 4
 There are several interlocking relationships among the various officers and directors of GRI, GEL and EJL. Four of the five individual defendants who are officers and directors of GRI also serve as officers and/or directors of GEL or EJL. GRI's President and Chairman of the Board is EJL's President, Chairman of the Board and principal stockholder. GRI's Chief Executive Officer and Vice Chairman of the Board is GEL's President and EJL's Vice President. GRI's Secretary and Board member is EJL's Vice President and General Counsel. GRI's Board member Twiford also serves as EJL's Vice President and Treasurer.
 
 
 5
 Vanderbilt's complaint alleges that the defendants conspired to acquire 80% control of GRI in order to use GRI's assets for their personal gain, but to GRI's detriment. Defendants allegedly effectuated their scheme by causing GRI to issue and to sell 1.2 million shares of common stock to GEL at an inadequate price. Defendants thus acquired over 80% control of GRI. Vanderbilt also alleges that defendants caused GRI to sell its coal properties to GEL at a grossly inadequate price and that defendants misappropriated tax benefits flowing from GRI's coal and geothermal operations for their own personal benefit.
 
 
 6
 Vanderbilt further alleges in his complaint that, prior to filing this action, he made repeated requests to GRI's board to investigate his charges and to take remedial action but that these efforts were unavailing. Consequently, Vanderbilt initiated this derivative action claiming that these and other acts evince a scheme to defraud GRI and its minority stockholders in violation of Secs. 10(b) and 14 of the 1934 Securities Exchange Act, 15 U.S.C. Secs. 78j(b) and 78n, Sec. 901(c) of the Organized Crime Control Act of 1970, 18 U.S.C. Sec. 1962(c) and Sec. 501 of the Pennsylvania Securities Act of 1972, 70 Pa.Cons.Stat.Ann. Secs. 1-101 et seq. (Purdon 1983).
 
 
 7
 Defendants deny these allegations and insist instead that Vanderbilt's suit is merely an attempt to force GRI to buy out his interests in GRI at a price substantially above market value. Vanderbilt denies this buy out charge and, in turn, claims that defendants tried to persuade him to sell his stock to them at less than its true value. He refused to do so. Vanderbilt also informed GRI that it was in default under aircraft leases GRI had with Cambridge Leasing Company, a partnership in which Vanderbilt is a general partner. Vanderbilt threatened to cancel the leases. Defendants deny that GRI is in default of its aircraft leases and claim that Vanderbilt's threats to cancel these leases is yet another attempt to coerce them into a buy out. Approximately two months prior to plaintiffs' initiating this action, defendants filed a separate lawsuit against Vanderbilt in the Philadelphia Court of Common Pleas to determine the parties' respective rights under the leases. GRI, Inc. v. Vanderbilt, No. 3892, February Term, 1982 (Philadelphia Court of Common Pleas).
 
 
 8
 Defendants took the following action after Vanderbilt filed his parallel complaints in the United States District Court for the Eastern District of Pennsylvania and the Delaware Court of Chancery. First, the GRI board appointed an independent litigation committee. The committee consisted of two GRI board members who were not involved in the matters to be investigated and who were not named as defendants in either Vanderbilt's or Noah's complaint. It was authorized to investigate Vanderbilt's charges and empowered to bind GRI in deciding whether it should bring an action against the defendants. The committee retained outside counsel and began its investigation while this action was pending before the district court. However, it did not conclude its investigation until after the district court had rendered its decisions in this litigation, and the defendants filed a motion to supplement the record in this appeal with the committee's report. We will deny this motion for the reason stated below.
 
 
 9
 Second, defendants moved to dismiss Vanderbilt's complaint alleging that he failed to make a good faith demand upon GRI's Board of Directors to investigate his charges and to take requisite remedial action as required by Fed.R.Civ.P. 23.1. Additionally, they alleged that he did not adequately represent GRI's shareholders.
 
 
 10
 Because of this challenge to his complaint, Vanderbilt asked C. Clay Noah, who owned 5000 GRI shares, to join him as a derivative plaintiff. Vanderbilt promised to indemnify Noah against any liability that might arise from the derivative action. Vanderbilt also promised to compensate Noah for any expenses, including attorneys' fees, he might incur in the litigation. Noah agreed to join in the action and filed a motion to permit him to intervene as a derivative plaintiff.
 
 
 11
 The district court held a hearing on September 24, 1982 to consider defendant's motion to dismiss Vanderbilt as a class representative and Noah's motion to intervene. At the conclusion of the hearing the trial judge made certain limited findings from the bench and, on October 18, 1982, he entered an order dismissing Vanderbilt and Vanderbilt and Company "because those plaintiffs cannot fairly and adequately represent the interests of the shareholders of [GRI]." Joint Appendix ("JA") at 454. This same order also granted Noah's motion to intervene as a party plaintiff.
 
 
 12
 Noah immediately filed his complaint, whereupon defendants promptly moved to dismiss it. Defendants argued that Noah, like Vanderbilt, failed to make a good faith demand that the directors investigate his charges in order to determine whether to continue the litigation. Moreover, they claimed that Noah was merely acting as Vanderbilt's surrogate to keep Vanderbilt's action alive. Because Vanderbilt was dismissed as an inadequate class representative, they argued, so must Noah be dismissed inasmuch as Vanderbilt actually controlled and financed Noah and his litigation. The district court found defendants' arguments persuasive and, in a February 8, 1983 order, dismissed Noah's complaint. We are now asked to reverse the district court's dismissal of both Vanderbilt's and Noah's complaints.
 
 VANDERBILT'S COMPLAINT
 
 13
 The law relating to fair and adequate representation is well settled. This court has declared that
 
 
 14
 [a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.
 
 
 15
 Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir.1982), quoting Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 247 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants made no challenge to the competence of appellants' attorneys. Thus, our inquiry focuses upon the district court's finding that Vanderbilt had interests antagonistic to those of the class.
 
 
 16
 Courts have listed the following as important factors in determining this issue:
 
 
 17
 economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.
 
 
 18
 Davis v. Comed, Inc., 619 F.2d 588, 593-94 (6th Cir.1980). In order to dismiss a derivative plaintiff for this reason, a court must find that the class representative has interests antagonistic to those of the class. Lewis v. Curtis, 671 F.2d at 788; Wetzel v. Liberty Mutual Insurance Co., 508 F.2d at 247.
 
 
 19
 It was not until its February 8, 1983 memorandum opinion which discussed its dismissal of Noah's complaint that the district court explained its October 18, 1982 order dismissing Vanderbilt's complaint. The court declared that Vanderbilt had been dismissed as an inadequate representative of the class because
 
 
 20
 Vanderbilt had sought from April, 1980, to the date of the derivative suit to have GEL purchase his GRI stock at a substantial premium above that at which it was being publicly traded on the Pacific Stock Exchange. Affidavit of George L. Barnes. In addition, Vanderbilt had threatened to curtail certain aircraft leasing arrangements with GRI. On February 23, 1982, in response to these reprisals, GRI filed suit in state court to prevent Vanderbilt from terminating these leasing arrangements.
 
 
 21
 JA at 1294. The district court thus concluded in its February 8, 1983 memorandum opinion that Vanderbilt's purported buyout and GRI's separate suit against Vanderbilt concerning leasehold rights constituted "personal interests antagonistic to the general class." Id.
 
 
 22
 However, the record of the September 24, 1982 hearing does not support this finding. Nowhere in the record of the September 24, 1982 hearing did the district court find that Vanderbilt was not a fair and adequate representative because his personal interests were antagonistic to those of the class for the reasons subsequently expressed in its February 8, 1983 opinion.
 
 
 23
 At the hearing the court did refer to the action GRI brought against Vanderbilt as "an ongoing concern as to whether or not he could continue to adequately represent" GRI's shareholders. Id. at 405. However, the court immediately explained that it did not mean that this action created competing and antagonistic personal interests that precluded Vanderbilt from being a named plaintiff. Rather, the court suggested that Vanderbilt might become too preoccupied with the action involving the aircraft leases brought against him by defendants to adequately prosecute the derivative action he filed against the defendants. Thus, the court did not make a finding that the suit GRI brought against Vanderbilt was the kind of "litigation pending between the [parties]," Davis v. Comed, Inc., 619 F.2d at 594, that might have made Vanderbilt's interests so antagonistic to those of the class of GRI stockholders that he could not fairly and adequately represent them.
 
 
 24
 The irony in the instant case is that appellees asked the district court to dismiss Vanderbilt as an inadequate class representative on the ground that there was other pending litigation involving aircraft leases between Vanderbilt and appellees. They seem oblivious to the fact that they and not Vanderbilt, initiated this other litigation.
 
 
 25
 To support their argument appellees cite Rothenberg v. Security Management Co., Inc., 667 F.2d 958, 961 n. 7 (11th Cir.1982); Davis v. Comed, Inc., 619 F.2d at 595, 597; Robinson v. Computer Servicenters, Inc., 75 F.R.D. 637, 641-42 (S.D.N.Y.1976); duPont v. Wyly, 61 F.R.D. 615, 623 (D.Del.1973). Yet, these cases are clearly distinguishable because in each case the derivative plaintiffs had initiated the other lawsuits against the corporate defendants to obtain a favorable settlement or in other ways to advance their interests against the corporation. In contrast, here it was the corporate defendants who initiated the first round of litigation. Under these circumstances less weight should be given to a corporate defendant's claim for the disqualification of the representatives of the shareholder class where the corporate defendant was the one who initiated the litigation about which it now complains. While there may be some circumstances in which a suit brought by a corporation against a shareholder creates, in that shareholder, interests significantly antagonistic to the shareholder class, normally he who is the first to enter the courthouse door and thereafter forces others to follow should not be permitted to use his own litigiousness as a basis to preclude others from suing him.
 
 
 26
 Moreover, the court expressly refused to make a finding with respect to Vanderbilt's alleged attempt to force a buyout of his stock at a premium well above market value. The district court therefore explicitly refused to consider whether Vanderbilt's alleged attempts to force a buyout at a premium created in him personal interests antagonistic to those of GRI's shareholders in the derivative action. The court even refused to make a finding as to whether Vanderbilt attempted to force a buyout, as defendants allege, or the defendants attempted to buy out Vanderbilt's GRI stock to buy off the lawsuit, as Vanderbilt contends.
 
 
 27
 It was on this record that the district court based its October 18, 1982 order dismissing Vanderbilt as derivative plaintiff because he was not a fair and adequate representative of GRI shareholders. The court abused its discretion in issuing this order without first finding that Vanderbilt's interests were antagonistic to those of GRI's stockholders.[2] Moreover, the justification for dismissing Vanderbilt--that the action brought against him by defendants might so divert Vanderbilt's efforts as to prevent him from giving the requisite attention to this derivative action--is, on the instant record, legally insufficient in itself to dismiss a derivative plaintiff. See Davis v. Comed, Inc., 619 F.2d at 594. While it is questionable whether, on this record, a district court could properly find that Vanderbilt is an inadequate class representative, at a minimum, the court below failed to make the requisite findings of fact which, as a matter of law, would support a holding that Vanderbilt's personal interests were antagonistic to the shareholder class. Therefore, the district court abused its discretion in dismissing Vanderbilt as an inadequate class representative. The district court's October 18, 1982 order must be reversed and the case remanded for a determination whether Vanderbilt's personal interests are sufficiently antagonistic to those of the shareholder class so that he must be disqualified.
 
 
 28
 The district court erred as a matter of law in failing to consider defendants' contention that Vanderbilt had not made a good faith demand upon GRI's board of directors for remedial action as required by Fed.R.Civ.P. 23.1. We will remand for a determination whether Vanderbilt satisfied this requirement.
 
 NOAH'S COMPLAINT
 
 29
 In its February 8, 1983 memorandum opinion the district court explained its reasons for dismissing Noah's complaint. It held that Noah inexcusably failed to make a good faith demand upon the independent litigation committee as required by Fed.R.Civ.P. 23.1. Additionally, the district court held that Noah was not a fair and adequate representative of the shareholder class.
 
 
 30
 The court found that the demand requirement of Rule 23.1 could not be excused because the committee was established for the purpose of investigating the allegations and of prosecuting the action if it was found to be in GRI's best interests. Moreover, the court found that the committee was truly independent because it comprised two GRI directors who were not involved in the activities that Vanderbilt and Noah challenged.
 
 
 31
 Noah's inadequacy as a class representative was directly related to the Court's holding that Vanderbilt was not an adequate representative. Finding that "Noah intervened ... primarily to rescue Vanderbilt's suit by creating a suit that Vanderbilt would control," JA at 1300, the court concluded "that the true control of this litigation is held not by Noah, but rather by Vanderbilt." Id. Thus, because Vanderbilt's interests, in the opinion of the court, were antagonistic to those of GRI's stockholders, Noah's interests were likewise antagonistic since he was merely Vanderbilt's alter-ego.
 
 
 32
 We disagree with the district court's reasoning and conclusions. The court's rulings on both the demand requirement and Noah's adequacy as a representative of GRI's shareholders are predicated upon its prior dismissal of Vanderbilt's complaint on the ground that Vanderbilt himself was not an adequate representative of the class of shareholders. We have already explained our reasons for rejecting the district court's conclusion that Vanderbilt is not an adequate representative of the class of GRI shareholders and for reversing Vanderbilt's dismissal as class representative.
 
 
 33
 Counsel for appellees strenuously argue that Noah is not a fair and adequate representative of the shareholder class because, inter alia, Vanderbilt had agreed to indemnify Noah for all expenses and attorneys' fees arising from this litigation. At oral argument counsel characterized as an "extreme situation" Vanderbilt's soliciting Noah's intervention and promising to indemnify Noah if he intervened. He seemed to suggest that there is something inherently perfidious in an arrangement whereby a litigant's counsel fees and litigation expenses are financed by someone other than the litigant.
 
 
 34
 We reject this argument. It is not uncommon in class actions to have persons other than the named plaintiff pay the costs of the litigation. This is especially true in cases involving indigent class plaintiffs and human rights issues. Indeed, attorneys' fees are sometimes even paid indirectly by the government through grants to public interest law firms. We do not see why class plaintiffs in corporate derivative actions must be obliged to pay the litigation costs out of their own pockets when class plaintiffs in these other class actions do not have the same obligation. When functioning as class plaintiffs in the federal courts the rich are entitled to the same privileges as the poor.
 
 
 35
 While we agree with the district court's conclusion that Noah intervened in this litigation to continue it after Vanderbilt was dismissed, we disagree with its holding that Noah is thereby rendered an inadequate representative of GRI's shareholders. No allegation was made concerning the competence of Noah's attorney. Moreover, the district court did not find that Noah had any personal or business interests antagonistic to those of the class. Thus, the sole basis for the district court's concluding that Noah is not a fair and adequate representative of the class is its finding that Noah is Vanderbilt's alter-ego.
 
 
 36
 Admittedly, under certain circumstances, courts may find that a derivative plaintiff is not a fair and adequate representative of the shareholder class when the action is controlled by another individual who is not a proper plaintiff. However, the other individual must himself have personal interests antagonistic to those of the class. See Davis v. Comed, Inc., 619 F.2d at 596. In the instant case, the district court failed to make the requisite findings to support its holding that Vanderbilt cannot fairly and adequately represent the interests of the class of GRI shareholders. Therefore, the district court's similar holding as to Noah cannot rest solely on its holding as to Vanderbilt. Having rejected the only predicate for the district court's dismissal of Noah's complaint on the grounds that he is not a fair and adequate class representative, we must also reject the dismissal itself.
 
 
 37
 The district court rejected the averments Noah made in his complaint which he claims excuse him from having to make demands upon the independent litigation committee for remedial actions. Noah alleged that Vanderbilt made several unsuccessful demands on GRI's board of directors for corrective action prior to filing his complaint. Noah also alleged that the independent litigation committee is not truly independent since a majority of the board of trustees were involved in the alleged wrongdoing and they dominate the committee. Therefore, Noah claims that his making additional demands upon the board of directors would be futile.
 
 
 38
 In rejecting Noah's argument, the district court held that the independent litigation committee is truly independent. The basis for its holding is that "the Committee was established to investigate the allegations of any wrongdoing and to determine whether prosecution of the derivative action would be in the best interests of the corporation." JA at 1296. It also found that the two directors appointed to the committee had not participated in the alleged wrongdoing and had the power to bind the board and the corporation. The district court therefore held that the demand requirement could not be excused and dismissed Noah's complaint because Noah failed to make demands upon the independent litigation committee.
 
 
 39
 The district court overlooked the legal rule that required it to consider whether the demand requirement was met on the facts that existed at the time the litigation was commenced. This rule was enunciated in Cramer v. General Telephone & Electronics Corporation, 582 F.2d 259, 276 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). In Cramer the derivative plaintiff failed to allege in his complaint with particularity the reasons why a demand on the board of directors would have been futile. He attempted to cure this defect by arguing retrospectively that a demand would have been futile since an audit committee of the board subsequently opposed litigation against the board. We rejected this argument and held:
 
 
 40
 To be sure, the Special Litigation Committee later opposed the maintenance of Cramer's derivative action. But that Committee's determination was made after Cramer had already commenced his suit. The futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight.
 
 
 41
 Id. We rejected Cramer's action because, at the time he commenced his action, the board of directors had not yet expressed its opposition to his derivative action.
 
 
 42
 In the case now before us, the independent litigation committee was created after Vanderbilt commenced this action. Noah intervened in this action upon Vanderbilt's discharge. In fact, the district court declared that "we would go forth with the present pleadings, without changing any of the other pleadings or any of the other discovery or any of the other documents that have been filed other than would be necessary by reason of the change of the derivative plaintiff." JA at 410. Thus, Noah's filing of his complaint merely changed the class representative and preserved an already existing action. It did not begin a new litigation. Id. at 409-10, 412-13.
 
 
 43
 Applying the Cramer rule to the instant case we must conclude that the district court erred in failing to determine whether Vanderbilt's complaint adequately explained why a demand requirement was unnecessary or adequately stated that a demand had been made and refused. If the district court had found Vanderbilt's complaint satisfactory in this respect, Noah would be excused from the demand as of the time Vanderbilt commenced this action. Therefore, we will reverse the district court's order dismissing Noah's complaint on this ground and will remand for the purpose of determining whether the demand requirement of Rule 23.1 was satisfied at the time Vanderbilt filed his complaint.
 
 
 44
 In light of our disposition of this issue we see no purpose in granting appellee's motion to supplement the record with the report of the independent litigation committee. We will therefore deny appellee's motion.
 
 
 45
 For the foregoing reasons, the district court's order of October 18, 1982 dismissing Vanderbilt's complaint will be reversed; the district court's order of February 8, 1983 dismissing Noah's complaint also will be reversed. Appellees' motion to supplement the record will be denied. The case will be remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 This name is misspelled "Medelon" on the district court docket sheet. We will use the correct spelling here
 
 
 [1]
 Oliver DeGray Vanderbilt brought a parallel derivative action in the Delaware Court of Chancery. Vanderbilt v. Geo-Energy, Civil Action No. 82-6780
 
 
 [2]
 Indeed, appellees' counsel conceded at oral argument that the district court did not make a finding during the September hearing that Vanderbilt's interests were antagonistic to those of GRI's shareholders. Counsel agreed that the court made its findings in its February 8, 1983 memorandum opinion after it had issued its order of October 18, 1982 dismissing Vanderbilt as a derivative plaintiff. Transcript of Oral Argument, September 14, 1983, 16-17