## In re DAYCO CORPORATION DERIVATIVE SECURITIES LITIGATION.

### Nos. C–3–82–184, C–3–82–254, C–3–82–329 and C–3–82–405.

United States District Court,
S.D. Ohio, W.D.

March 9, 1984.

See also 102 F.R.D. 468 and 102 F.R.D. 633.

Douglas G. Cole, Cincinnati, Ohio, Ira Rubin, Dayton, Ohio, for plaintiff Heist.

Richard Greenfield, Donald B. Lewis, Bala Cynwyd, Pa., Henry Ruth, Philadelphia, Pa., for plaintiff Blumburg.

Gene Mesh, Cincinnati, Ohio, Robert Stull, Jules Brody, New York City, for plaintiff Efros.

James Fornari, William Jarblum, New York City, Dermot G. Foley, New York City, for plaintiff Purcell.

James K. Robinson, Detroit, Mich., Denis Daly, Dayton, Ohio, for defendant Dayco Corp.

Howard Schiffman, Sidney Dickstein, Washington, D.C., for defendants Dourlet, Kahn, Wilson, McNeely, Hoffberger, Harris, Guttman, Stoddard, Merrell.

David Greer, Dayton, Ohio, Robert Morvillo, New York City, for defendant Gordon.

Jacob K. Stein, Cincinnati, Ohio, for defendant Jacobs.

Robert G. Stachler, Cincinnati, Ohio, for defendant Ernst and Whinne.

Barry P. Reich, Springfield, Ohio, Jed S. Rakoff, John L. Altieri, Jr., New York City, for defendant Curry.

Norman Ostrow, New York City, for defendant Jackson.

Shea & Gould, New York City, for defendants Foreign Transactions Corp., Trachem Co. Ltd., Edith Reich, Edith Reich as Executrix of Estate of Jacob Reich, Bri-

gette Jossemkumpt, Judith Reich, Michael Reich.

## DECISION AND ENTRY OVERRULING MOTIONS TO DISQUALIFY COUNSEL AND TO DISQUALIFY PLAINTIFF HEIST AS A REPRESENTATIVE OF DERIVATIVE STOCKHOLDERS; CONFERENCE CALL SET

RICE, District Judge.

Plaintiffs in these cases, consolidated for pretrial purposes, are stockholders of the Defendant Dayco Corporation, and are suing Dayco, twelve directors of Dayco, and a Dayco employee for violations of various federal and state laws. *See generally, In Re Dayco Corporation Derivative Securities Litigation*, 99 F.R.D. 616 (S.D.Ohio 1983) (decision of October 21, 1983, ruling on various discovery motions). Dayco has now moved (Doc. #110) to disqualify Douglas Cole, Esq., and his law firm, Strauss, Troy & Ruehlmann Co., L.P.A. (STR), from representing Plaintiff Robert Heist in Case No. C–3–82–184. Likewise, Defendant Richard Jacob, Dayco's Chief Executive Officer, has moved (Doc. #111) to disqualify Heist as a representative of other stockholders in the derivative action, pursuant to Fed.R.Civ.P. 23.1. For the reasons set out below, the Court overrules both motions.

### I. *Background*

As outlined in this Court's previous decision, 99 F.R.D. at 618, Heist and the other Plaintiffs [1] are suing Defendants under both "direct" and "derivative" claims. The claims under which Plaintiffs, as Dayco stockholders, alleged they were individually, directly injured consist of actions pursuant to § 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, and Rule 14a–9, 17 C.F.R. § 240. 14a–9 (1983), promulgated thereunder, and pursuant to civil portions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Plaintiffs also bring derivative claims, on behalf of the corporation, alleging that various of the individual Defendants mismanaged and wasted the corporate assets of Dayco.

These claims were filed in this Court early in 1982. On August 31, 1983, one Gerald Lovorn filed a lawsuit against Dayco and four officers of Dayco, in the Montgomery County (Ohio) Court of Common Pleas. Lovorn, an employee of Dayco from 1978 through September of 1982, alleged that Dayco wrongfully terminated him when he refused to participate in preparing improper financial statements and reports, concerning the events which are the subject of the federal lawsuit. Mr. Cole represented Lovorn in the state court suit. In September of 1983, Dayco filed an answer and counterclaim in state court, alleging that Lovorn falsified expense reports and improperly appropriated Dayco funds for his own use.

Shortly thereafter, Dayco filed a motion in the instant litigation to disqualify Mr. Cole and STR as Heist's counsel, for asserted violations of the Code of Professional Responsibility (CPR). In brief, Dayco argued that Mr. Cole was violating Canon 5 of the CPR [2] by simultaneously representing clients with differing interests. Those clients were Dayco, the real-party plaintiff in the federal court derivative action, and Lovorn, who was suing Dayco in state

---

1. Plaintiffs Blumberg, Efros and Purcell are represented by counsel other than STR. In addition, Heist is also represented by Ira Rubin, Esq. Defendants do not intimate that their motions to disqualify would affect Heist's co-counsel or the other Plaintiffs and their counsel.

2. Counsel have relied on the Canons of the CPR, which the Ohio Supreme Court adopted in 1970, and thus are applicable in this Court. Sixth Cir. Disciplinary R.V.E.; S.D.Ohio R. 2.6. The American Bar Association in August of 1983 advocated replacement of the CPR via adoption of new Model Rules of Professional Conduct (MRPC). Ohio, like most other states, has not yet considered whether or not to adopt the MRPC. *See,* Flaherty, *Ethics Fight: Round 2,* Nat'l L.J., Jan. 16, 1984, at 1, col. 1. *Cf. General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 717 n. 1 (6th Cir.1982) (Engle, J., concurring and dissenting) (arguing that MRPC can offer "important guidance" on disqualification issues).

court. For virtually identical reasons, Defendant Jacob also moved to disqualify Heist as a Rule 23.1 representative, since his counsel was allegedly representing conflicting interests. Mr. Cole and STR vigorously argued that, in fact, no improper representation was occurring. Nevertheless, viewing the disqualification motions as "red herrings" intended to "delay and harass" the prosecution of the lawsuits, Cole and STR voluntarily withdrew from representing Lovorn. He is now represented by the Cincinnati law firm of Manley, Jordan & Fischer, L.P.A. Defendants dispute Plaintiff's position that the voluntary withdrawal, in effect, renders the disqualification motions moot.

Oral argument was heard on the disqualification motions on January 13, 1984. In this Circuit, any factual disputes, in the context of disqualification motions, must be resolved via an evidentiary hearing. *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 710–11 (6th Cir.1982) (*General Mill*). However, counsel told the Court at oral argument that no evidentiary hearing was necessary, and suggested that the Court resolve the matter on the basis of undisputed facts gleaned from the record. In his response to the motions, Plaintiff Heist also submitted an affidavit from Mr. Cole, wherein he avers that neither he nor his law firm has ever represented, or received confidential communications from Richard Jacob, Dayco, or any officers and employees of Dayco. Doc. # 117, Ex. C. Defendants have not sought to contest these assertions.

## II. Standards for Disqualification

The Court will first address Dayco's motion to disqualify Mr. Cole and STR from further representation of Plaintiff Heist. As noted above, Plaintiff argues that whatever merit the disqualification motion may have had, it is entirely mooted by the voluntary withdrawal of Cole and STR from representing Lovorn in state court. On the other hand, Defendant insists that the conflicts of interest asserted in its motion continue to the present, since the conflicts are real, not merely potential, and since an

attorney's obligations continue to present *and* former clients. *See,* Transcript of Oral Argument, Doc. # 139, pp. 17–19 (remarks of Sidney Dickstein, Esq.).

### A. Simultaneous and Successive Representation

When Defendant Dayco initially filed its motion to disqualify Cole and STR, it was clearly framed as addressing the alleged conflict of interest resulting from simultaneous representation of differing interests, prohibited by Canon 5 of the CPR. The alleged "differing interests" were the concurrent representation of Dayco (as a real-party plaintiff in the federal derivative suit) and of Lovorn (suing Dayco, among others, in state court). Accordingly, Defendant relied on the leading decision of *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976) and other case law discussing concurrent representation of clients with differing interests. *See generally, Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1292–1308 (1981) [hereinafter cited as *Developments* ].

The voluntary withdrawal by Cole and STR from the Lovorn suit renders Canon 5 and its attendant case law essentially inapplicable. While not expressly referred to by the parties, the Court believes that the case law addressing *successive* representation provides an appropriate analytical framework to determine the effect, if any, of the withdrawal from the Lovorn suit. *See generally, id.* at 1315–34 (discussing successive representation cases).

The Court reaches this conclusion on the basis of the rationales underlying the prohibitions against improper simultaneous and successive representation. The former type of representation, based on Canon 5, is forbidden primarily "to ensure that every client receives his attorney's loyalty unimpaired by the pressures of conflicting interests." *Id.* at 1293 (footnotes omitted). That situation does not obtain herein, since Cole and STR no longer represent *both* Lovorn and Dayco. In contrast, the prohibition against the latter type of representa-

tion arises from Canon 4's duty to preserve a client's confidence and secrets, even after the attorney-client relationship is terminated. The interest of a current client "in a vigorous representation potentially threatens the former client's interest in maintaining the confidentiality of all disclosures made to his attorney during the prior representation." *Id.* at 1315. The latter situation best approximates the circumstances herein, since Defendant claims that Cole's prior representation of Lovorn will continue to taint and prejudice his effective representation of Dayco in the derivative action.

This is so, despite the fact that, as recognized by Dayco, Reply Memorandum, Doc. # 121, p. 6, the factual circumstances herein are unique. In most successive representation cases, one party is complaining that a former counsel (or law firm) is now representing an adversary. Cole and STR, in contrast, have represented Dayco since the initiation of the derivative suit, and represented Lovorn for only a closed period during the representation of Dayco. Still, the Court believes that the successive representation cases provide the most analogous body of law with which to analyze Dayco's motion to disqualify.[3]

## B. *Adverse Interest, Substantial Relationship, and Presumptions*

■ It is axiomatic that the moving party, Dayco, bears the initial burden of persuasion and proof on its motion to disqualify Cole and STR. *City Consumer Services, Inc. v. Horne,* 571 F.Supp. 965, 970 (C.D.Utah 1983); Liebman, *The Changing Law of Disqualification: The Role of Presumption and Policy,* 73 Nw.U.L.Rev. 996, 1002–03 n. 28 (1979). As we shall see, however, burdens or presumptions can be shifted to counsel attempting to thwart disqualification. Most courts view the trial judge's resolution of a disqualification motion as a discretionary one, *e.g., City of*

*Cleveland v. Cleveland Electric Illuminating Co.,* 440 F.Supp. 193, 196 (N.D.Ohio 1976) (Krupansky, J.) (*City of Cleveland*), *aff'd mem.,* 573 F.2d 1310 (6th Cir.1977), *cert. denied,* 435 U.S. 966, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978), although the Sixth Circuit has recently stated that it may review such decisions on a *de novo* basis, rather than as an abuse of discretion. *General Mill,* 697 F.2d at 711.

■ Based on the leading case of *T.C. Theatre Corp. v. Warner Brothers Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953), most courts, including this Circuit, have adopted a test requiring that an attorney may not represent a client in litigation against a former client if the former and current representations are both "adverse" and "substantially related." *See, General Electric Co. v. Valeron Corp.,* 608 F.2d 265, 267 (6th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 292 (6th Cir.1979); *City of Cleveland,* 440 F.Supp. at 206–07; *Developments,* at 1317.

■ The adversity requirement protects against a former client's confidence being used against the client, in later litigation, to his or her detriment. *Developments,* at 1324. Generally, the test of adversity is premised on whether or not the interests of the former and current clients are differing. *City of Cleveland,* 440 F.Supp. at 208. The substantial relationship requirement has been the subject of greater attention in the case law. Some courts, notably in the Second Circuit, have found a substantial relationship between prior and current litigation only if the issues therein were identical or essentially the same. *Developments,* at 1325. On the other hand, most courts, including those in the Sixth Circuit, have adopted a broader standard, only requiring that there be a relationship between the subject matters or factual con-

---

**3.** This view of the motion does not stray far from counsel's understanding of the case. Counsel expend most of their firepower on the question of whether or not the joint representation of Lovorn and Dayco presents (then or

now) a conflict of interest. The Court will address this very issue *infra,* in the discussion of whether Cole's present representation of Dayco is adverse to his prior representation of Lovorn.

texts of the former and current representations. *See, General Electric,* 608 F.2d at 267; *Melamed,* 592 F.2d at 292; *Developments* at 1325.[4]

Likewise, courts are split on the result that follows once a moving party has demonstrated that the prior and current representations are adverse and substantially related. The Second Circuit has held that the presumption of receipt of client information for use in the present litigation (which would justify disqualification) is rebuttable. *Developments,* at 1330–31 (relying on *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir.1975)). The Seventh Circuit, in contrast, seems to have adopted an irrebuttable presumption of receipt of client confidence, subject to limited exceptions. *See, e.g., Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186, 197 (7th Cir.1979) (en banc); *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1267 (7th Cir.1983).[5] This Circuit has not had occasion to address one or the other standard. However, in *General Electric,* the Sixth Circuit characterized Judge Kupransky's adoption of a rebuttable presumption in *City of Cleveland* as "dictum," and listed a "cf." citation to the Seventh Circuit's decision in *Nova Terapeutisk.* 608 F.2d at 268. Coupled with the Sixth Circuit's rejection of the Second Circuit's "issues" approach to the substantial relationship test, it seems to follow that, absent further guidance, this Court should assume that Seventh Circuit disqualification decisions are persuasive precedent on the presumption test.

In any event, the Court need not reach this point, since the Court holds that Cole's and STR's prior representation of Lovorn was not adverse to his present, continuing representation of Dayco in the derivative suit. It is to that question to which the Court now turns.

III. *Application of Standards*

  A. *Individual and Derivative Stockholder Lawsuits*

As outlined above, Defendant's principal argument is that Cole's joint representation of Lovorn and Dayco presented an irreconcilable conflict of interest, which persists even though representation of Lovorn has been terminated. Put another way, Defendant would appear to argue that the prior representation of Lovorn is adverse and substantially related to the continuing representation of Dayco. Consideration of Defendant's position requires a review of the nature of a derivative action.

It is well settled, and the Supreme Court has recently reiterated (in a case interpreting Fed.R.Civ.P. 23.1), that a derivative suit is founded on a cause of action belonging to the corporation, in which the corporation itself is the appropriate plaintiff, but has failed to sue on its own behalf. *Daily Income Fund, Inc. v. Fox,* —— U.S. ——, 104 S.Ct. 831, 834–35, 78 L.Ed.2d 645 (1984). *Accord, Davis v. Comed, Inc.,* 619 F.2d 588, 593 (6th Cir.1980); H. Henn & J. Alexander, Law of Corporations 1035–37 (3d ed. 1983) [hereinafter cited as Henn & Alexander]. Thus, Cole and STR are, in effect, representing Dayco itself in the fed-

---

**4.** The CPR does not expressly address successive representation, and the substantial relationship test was developed in the case law. Rule 1.9 of the MRPC, *see,* footnote 2, *supra,* addresses that issue and codifies the substantial relationship test, but does not define a "substantially related matter." However, the comment to the Rule states that "the scope of a 'matter' ... may depend on the facts of a particular situation or transaction.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as changing sides in the matter in question." This has been described as favoring "factual inquiry over the judicial system's prior focus on appearances." Castles & Foster,

*Conflicts and Lawyer Disqualification,* Nat'l L.J., Feb. 6, 1984, at 16, col. 3.

**5.** The major exception to the irrebuttable presumption in the Seventh Circuit is when a single attorney, as opposed to an entire law firm, changes jobs and represents the adversary of a client of his former firm. In that case, the presumption becomes rebuttable. *See, Schiessle v. Stephens,* 717 F.2d 417, 420 n. 2 (7th Cir. 1983). *See also, Hughes v. Paine, Webber, Jackson & Curtis, Inc.,* 565 F.Supp. 663 (N.D.Ill.1983) (extensive discussion of Seventh Circuit case law)

eral derivative suit. Defendant argues that the requisite adversity of interests and substantial relationship between the Lovorn and Dayco suits are present, since (1) counsel was simultaneously suing and representing Dayco, and (2) the matters raised by the counterclaim in the Lovorn suit are virtually identical to the matters pressed on behalf of Dayco in the derivative suit.

These arguments have a surface appeal. Nevertheless, the Court agrees with Plaintiff that the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action.[6] Nearly twenty years ago, Judge Marvin Frankel rejected the position advanced by Defendants:

> As to the role of plaintiffs as both "friend" and "enemy" to the corporation, this surface duality is in fact a routine matter in the courts. For more purposes than pleading, "antagonism" between the derivative plaintiff and those who really run (i.e., are) the corporation is a common phenomenon. Cf. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). We need look no farther for illustration than this case, where the corporation and its able counsel pull the laboring oar on a motion to dismiss a claim purportedly for the corporation's benefit.

*Heilbrunn v. Hanover Equities Corp.*, 259 F.Supp. 936, 939 (S.D.N.Y.1966). Most courts have followed Judge Frankel's emphasis on the "surface duality" of joining individual and derivative actions, and held that the "theoretical conflict of interest" does not justify a per se test prohibiting joinder of such actions. These same courts have added that a different result might

obtain if the potential conflict of interest ripens into an actual conflict. *See, In Re Transocean Tender Offer Securities Litigation*, 455 F.Supp. 999, 1014 (N.D.Ill.1978) (relying on *Bertozzi v. King Louie International, Inc.*, 420 F.Supp. 1166, 1179–80 (D.R.I.1976) and *Kammerman v. Pakco Companies, Inc.*, [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96, 318 at 93, 065 n. 3 (S.D.N.Y.1978)). *See also, Kane Assoc. v. Clifford*, 80 F.R.D. 402, 408 (E.D.N.Y. 1978); *Miller v. Fisco*, 63 F.R.D. 132, 134 (E.D.Pa.1974).

Several cases cited by Defendant do not compel a different result. In both *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 94–95 (S.D.N.Y.1972) and *Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623–24 (S.D.N.Y.1973), the Courts held that stockholders pursuing individual claims could not also serve as representatives of a class of derivative plaintiffs. These decisions plainly relied on the theoretical distinction between individual and derivative stockholder suits. That distinction is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts." *Bertozzi*, 420 F.Supp. at 1180. Typically, *both* such suits will attack some sort of alleged misconduct by corporate management, and diligent counsel can hardly be expected not "to attack all fronts with equal vigor." *Id. See also,* Henn & Alexander at 1045–47. For these reasons, the Court joins Judge Frankel in rejecting a per se rule against counsel representing both an individual and derivative plaintiff. Henn & Alexander at 1078.[7]

---

**6.** Most of the cases to be discussed actually address motions to disqualify plaintiffs (not necessarily their counsel) under Fed.R.Civ.P. 23.1, which requires, *inter alia,* that the derivative plaintiff "fairly and adequately represent the interests of the shareholders...." This is the basis for Jacob's motion to disqualify Plaintiff Heist, addressed *infra.* Nevertheless, the analysis of these cases seems fully applicable to the question of attorney disqualification.

**7.** This result is supported by the practicalities of most individual and derivative stockholders

suits. As suggested by Judge Frankel, and as evidenced by the posture of the instant case, the corporation, while technically a plaintiff in the derivative suit, will typically contest the discovery and other efforts of the individual, derivative plaintiffs, even though the corporation is not, technically, permitted to defend the derivative suit on the merits. Henn & Alexander at 1079–82. *Accord, In re International Systems & Control Corp.,* 693 F.2d 1235, 1239 (5th Cir.1982) (in derivative litigation, "[i]t is not reasonable to indulge in the fiction that counsel, hired by

■ Thus, the Court concludes that Defendant has failed to demonstrate that Cole's and STR's prior representation of Lovorn was adverse to their present, continuing representation of Dayco in the derivative matter. It is unnecessary, then, to consider whether or not the matters were substantially related (although it seems plain that they were), and which type of presumption of receipt of confidential information might attach.

## B. *Circumstances of This Case*

While Defendant does not concede the propriety of abandoning a per se rule, it also argues that the potential conflict of interest, between individual and derivative representation, has ripened into an *actual* conflict in this case. In particular, Defendant asserts, in its reply memorandum and at oral argument, that Lovorn's defense of the counterclaim in state court (accusing him of misusing Dayco expense accounts) is inconsistent with prosecution of the derivative suit (presenting similar claims against Dayco officials) on behalf of Dayco. This conflict continues to the present despite the withdrawal, Defendant argues, since Cole and STR acknowledge that Lovorn was an important source of information for the allegations of corporate misconduct in the federal complaint, and could be a witness for Plaintiff at the federal trial.

· Dayco's arguments are not without force. Nevertheless, the Court agrees with Plaintiff that the asserted conflict of interest is not so apparent so as to justify, at least at this time, disqualification of Cole and STR. Dayco takes Plaintiff to task for arguing that the counterclaim in the Lovorn action (the defense of which would run counter to the claims of the derivative

suit) is only negligible compared to dollar amounts at issue in the derivative suit and Lovorn's direct suit. Even a "negligible" conflict of interest, Dayco insists, could impare Cole's and STR's adequate representation of the derivative suit.

■ Plaintiff's response, however, is a logical one. The legal theory underlying the derivative suit and Lovorn's complaint in state court is parallel and entirely compatible. The withdrawal from representation of Lovorn, coupled with the limited nature of the "taint" evidenced by the Lovorn *counterclaim*, surely reduces the possibility that Cole and STR will not vigorously pursue the derivative action. *Cf. Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 25–26 (N.D.Ill.1980) (*Ohio-Sealy*). Courts are, and should be, reluctant to premise disqualification on the complaining party having initiated the litigation (i.e., the counterclaim in the Lovorn suit) which allegedly forms the conflict of interest. *See, Vanderbilt v. Geo-Energy, Ltd.*, 725 F.2d 204 [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 99, 623 at 97, 453 (3rd Cir.1983) (*Vanderbilt*); Lingren, *Toward a New Standard of Attorney Disqualification*, 1982 Am.Bar Foundation Res.J. 421, 434–35.[8] Moreover, as Plaintiff suggests, the presence of other counsel representing Heist and the other Plaintiffs ensures that Cole and STR will not take action to the detriment of the derivative suit. *See, Kane Associates*, 80 F.R.D. at 408. Finally, this Court has the responsibility under Rule 23.1 to approve of any settlement of the derivative claims. *E.g., In re General Tire and Rubber Company Securities Litigation*, 726 F.2d 1075 [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 99, 622 (6th Cir. 1984). The Court will thus be in a position

---

management, is also constructively hired by the same party counsel is expected to defend against."), discussed in this Court's previous decision, 99 F.R.D. at 620. Moreover, it seems likely that Plaintiffs would, as a practical matter, wish to join their individual and derivative suits, and obtain one counsel to represent them on both. The specialized nature of the securities bar in larger cities, both for plaintiffs and defendants, lends credence to this assumption.

*Cf.* J. Heinz & E. Laumann, Chicago Lawyers: The Social Structure of the Bar, chs. 2–4 (1983); Lewin, *Class Actions Pay For Some Lawyers,* New York Times, Dec. 5, 1983, at 27, cols. 4–5.

**8.** In so stating, the Court need not adopt Plaintiff's position that Defendants deliberately manipulated the Lovorn litigation in order to secure the disqualification of counsel.

to review any settlement to insure that Cole and STR did not compromise the interests of Dayco stockholders through their prior representation of Lovorn, and their desire to utilize him as a witness in the federal suit. *See, Ohio-Sealy,* 90 F.R.D. at 26.

Dayco also charges that Cole's and STR's representation of Lovorn has compromised their ability to comply with the confidentiality orders entered in this lawsuit. Specifically, Dayco argues that certain documents that it provided to Cole and STR for use in the federal suit could have been used in the state court litigation. *See also,* Transcript of Oral Argument, Doc. # 139, p. 19 (remarks of Sidney Dickstein, Esq.); Jacob's Motion to Disqualify, Doc. # 111, p. 6, 12. The Court agrees with Plaintiff that there is no proof that Cole and STR violated any confidentiality order of this Court, and that the withdrawal from representing Lovorn, as well as the additional factors noted above, will insure that such orders will be followed in the future. The Court is confident that Cole and STR will obey the orders and not reveal any confidentially-revealed documents to Lovorn or to any other unauthorized individual.[9]

For these reasons, the Court declines to sustain Dayco's motion seeking disqualification of Mr. Cole and his law firm. The primary bases for the decision is the lack of *inherent* conflict between one attorney representing both individual and derivative stockholder plaintiffs, and that the circumstances of this particular case do not compel disqualification. Should these circumstances materially change, the Court stands ready to reconsider its decision. The Court believes that this approach is compatible with the view, expoused by both courts, *e.g., Evans v. Artek Systems Corp.,* 715 F.2d 788, 791–92 (2d Cir.1983); *City of Cleveland,* 440 F.Supp. at 196, and commentators, *e.g.,* Lindgren at 450–51; *Developments* at 1328, 1330, that the severe remedy of disqualification should be predicated upon factually based, probable or real conflicts of interest, rather than mere apparent or theoretical conflicts. *See also,* note 4, *supra.* On the record before the Court, Dayco has not met that standard.

### IV. Jacob's Rule 23.1 Motion

Rule 23.1 requires, in part, that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation . . . ." Among the factors to consider in determining the adequacy of representation are the "economic antagonisms between representative and class," the remedy sought by the derivative plaintiff, and the relative magnitude of plaintiff's interest in the suit. *Davis v. Comed, Inc.,* 619 F.2d at 593–94. *See also,* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1833 (1972). The adequacy of plaintiff's counsel is also a factor to consider. *Vanderbilt,* at 97, 454.

Defendant Jacob relies primarily on the last factor in arguing that Plaintiff Heist should be dismissed as a derivative Plaintiff, since his counsel cannot adequately perform while under a conflict of interest.[10] For the reasons set out earlier in this entry, the Court does not find that rationale

---

**9.** Dayco also makes brief reference to Canon 9 of the CPR, which mandates disqualification to "avoid even the appearance of professional impropriety." However, that Canon is usually applied only to conduct which would violate another, more specific provision of the CPR. *See, Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 440 (9th Cir.1983); *Developments* at 1326. Given the Court's holding that Dayco has not demonstrated a violation of Canons 4 or 5, the Court declines to disqualify Cole and STR on the basis of Canon 9 alone. Interestingly, the MPRC have abolished the "appearance of impropriety" test, since it was considered "too vague." The MPRC "reflect the recent reluctance of some courts to disqualify attorneys solely under Canon 9." Castles & Foster, *supra,* note 4, at 15, col. 3.

**10.** It should be noted, though, that even if Jacobs were successful in demonstrating that Heist's counsel is inadequate, it does not inexorably follow that Heist himself is an inadequate representative. Defendants have not accused his co-counsel of misconduct. *See,* footnote 1, *supra.* Moreover, even if Cole and STR were disqualified, Heist could, presumably, retain counsel to replace them.

to be well taken. *See also,* note 6, *supra.* Therefore, the Court overrules Jacob's motion.

## V. *Conclusion*

For these reasons, the Court overrules the pending motions to disqualify counsel Cole and his law firm, and Plaintiff Heist, from further participation in this lawsuit. Counsel will take note that a conference will be had at 4:00 p.m. on Thursday, March 29, 1984, in this Court's chambers, for the purpose of monitoring the status of discovery, setting a trial date, et cetera.

See also 102 F.R.D. 468 and 102 F.R.D. 624.