**In re William G. SHEEHAN, Debtor.**

**Bankruptcy No. 95–32374.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

May 22, 1996.

David Schnorf, Toledo, OH, for debtor.

Louis Yoppolo, Trustee, Toledo, OH.

Barry Savage, Mt. Pleasant, SC.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Debtor's Motion to Disqualify Barry E. Savage, Esq., as counsel for certain creditors in this bankruptcy case. This Court has reviewed the arguments of counsel, exhibits as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Debtor's Motion shall be denied.

### FACTS

Debtor seeks to disqualify Barry E. Savage, Esq. from representing GRC or any other person or entity associated with GRC or a certain Huntington National Bank (hereafter "Huntington") loan transaction. In the Debtor's Memorandum in Support of his Motion to Disqualify, the Debtor recounts certain facts: GRC is an Ohio partnership formed on or about January 22, 1987. The partnership was formed for the purpose of purchasing and redeveloping a property known as the Gardner Building. The original partners of GRC consisted of The Collaborative Gardner Building Investors, Gemerchak Partner, North Shore Development Company, Noel S. Romanoff, Westwood Properties, and Sunforest Investment Corporation. Debtor, William G. Sheehan, is a director, officer and shareholder of Sunforest Investment Corporation (hereafter "SIC").

In or about June, 1987, GRC negotiated a construction loan to finance the purchase and renovation of the Gardner Building. The Huntington loan was secured by a first mortgage on the Gardner Building as well as the personal guarantees of the Debtor and a number of creditors in the present bankruptcy case. The terms of the financing provided, in part, that the obligation would become

due and payable in approximately eighteen months.

The Debtor negotiated several extensions of the obligation after the expiration of the initial eighteen month period. In or about the summer of 1990, attorney Barry Savage began attending the GRC partnership meetings at the request of Westwood Properties and an individual guarantor. The individual guarantor requested that Mr. Savage represent GRC partnership and the individual guarantors in further negotiations with Huntington to refinance the outstanding loan obligation. About this time, GRC formed a negotiating committee to meet with representatives of Huntington concerning the refinancing of the outstanding obligation. The negotiating committee consisted of all partners of GRC and all personal guarantors of the obligation except SIC, the Debtor, and one Stephen H. Weiner.

Debtor states throughout the course of the negotiations with Huntington, Mr. Savage represented that he was counsel for GRC and the individual guarantors, including Debtor. Debtor further states that during the course of negotiations, he had conversations with Mr. Savage concerning the negotiations and refinancing and received correspondence from Mr. Savage concerning the status of negotiations.

On or about July 6, 1993, GRC and other guarantors of the Huntington loan filed suit against SIC, and the Debtor and Mr. Weiner individually, in the matter captioned *GRC, et al., v. SIC, et al.,* Case no. 93–1898, in the Lucas County Court of Common Pleas. The matter was initially filed by Mr. Savage. However, on or about April 28, 1994, the Complaint was amended by another attorney who replaced Mr. Savage. The amended Complaint identified only the individual investors and guarantors as plaintiffs, and only Debtor and Mr. Weiner as defendants. The basis for the suit involved the Huntington loan. The claims giving rise to the above referenced lawsuit were submitted to binding arbitration. On or about August, 1995, an arbitration award was issued. The arbitrators held that Debtor and Mr. Weiner were jointly and severally liable to the plaintiffs in the case.

On September 21, 1995, Debtor filed a Chapter 13 bankruptcy petition. On October 23, 1995, Debtor moved to convert his Chapter 13 bankruptcy to Chapter 7. The Motion was granted on October 25, 1995. On November 17, 1995, Debtor filed his bankruptcy schedules in accordance with the applicable rules. The schedules identify the prevailing parties in the arbitration as creditors. GRC, the purported creditor represented by Mr. Savage, had not been identified as a creditor. Mr. Savage now claims to represent not only GRC, but also the individual partners.

On November 16, 1995, Mr. Savage, purportedly on behalf of GRC Partnership, filed a Motion seeking to conduct a 2004 examination of the Debtor. On December 8, 1995, the Debtor filed a Memorandum in Opposition to Mr. Savage's Motion for 2004 exam and further moved for a Protective Order. Debtor now seeks an Order from the Court disqualifying Mr. Savage from representing GRC or any other person or entity associated with GRC or the Huntington loan in this matter.

### DISCUSSION

In support of his Motion to Disqualify Attorney Barry E. Savage from representing any creditor associated with the Huntington loan in this case, the Debtor cites only one case to epitomize the law regarding disqualifications of counsel. *In re Crabtree,* 126 B.R. 540 (Bankr.S.D.Ohio 1991). In *Crabtree,* the Court cites the following test for disqualification:

> As a moving party seeking to disqualify an attorney for a conflict of interest, [the movant] must show:
>
> 1. the moving party is a former client of the adverse party's counsel;
>
> 2. there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit.
>
> 3. the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Systems Corp.,* 715 F.2d 788 (2nd Cir.1983).

*Crabtree,* 126 B.R. at 541. The *Crabtree* Court also stated:

> The primary purpose for disqualification, if all tests are met, is to protect the confidentiality of information received from the former client, even if such information is only potentially involved in the current action. *In re Dayco Corp. Derivative Securities Litigation,* 102 F.R.D. 624 (S.D.Ohio 1984). Another purpose is to protect the integrity of the adversarial process. *Board of Educ. of New York City v. Nyquist,* 590 F.2d 1241 (2nd Cir.1979).

*Crabtree,* 126 B.R. at 541.

In *Crabtree,* the Court cited *In re Evans,* a Second Circuit Court of Appeals case. The Court in *Evans* also elaborated:

> [W]hile we have not hesitated to disqualify counsel when the circumstances warranted it, we also noted that, 'there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to chose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession.' *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2nd Cir.1978). We have also noted that disqualification motions 'are often interposed for tactical reasons,' and that 'even when made in the best of faith, such motions inevitably cause delay.' *Board of Education v. Nyquist,* supra, 590 F.2d at 1246 (2nd Cir.1979); see *Allegaert v. Perot,* 565 F.2d 246, 251 (2nd Cir.1977).

*Evans,* 715 F.2d 788, 791–792.

These sentiments were shared by the District Court for the Northern District of Ohio. *Baker, et al. v. BP America, Inc., et al.,* 768 F.Supp. 208, 213 (N.D.Ohio 1991). In *Baker,* the Court explained:

> The Court recognizes that motions to disqualify counsel should be considered with extreme caution, in view of the litigant's interest in retaining counsel of the litigant's choice, and the danger that the opposing party might use a motion to disqualify to achieve tactical advantage. See *Paretti v. Cavalier Label Co., Inc.,* 722 F.Supp. 985 (S.D.N.Y.1989); see also [*Evans,* discussed supra]. This Court also recognizes that great care must be taken before disqualifying an attorney since interlocutory appeals are generally unavailable from such orders. See *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *In re Mechem,* 880 F.2d 872 (6th Cir.1989); *Kahle v. Oppenheimer & Co., Inc.,* 748 F.2d 337 (6th Cir.1984).

*Baker,* 768 F.Supp. at 213.

■ With these principles in mind, this Court can weigh the propriety of the Debtor's request in the case at bar. This Court can reach a conclusion in this matter based upon the third criteria enunciated in *Crabtree* and *Evans.* That is, the Debtor must show that the attorney whose disqualification is sought had access to, or was likely to have access to, relevant privileged information in the course of his prior representation of the client. Debtor has not shown or even alleged that there was any privileged information shown to Mr. Savage during the time he allegedly represented the Debtor, or what that information might be. At best, it was Mr. Savage's job to negotiate on behalf of GRC and all the guarantors as a whole, and not to protect the special interests of any individual guarantor. Indeed, Mr. Savage asserts, and the Debtor does not deny, that Debtor was represented at that time by separate counsel to protect his individual interests. (This separate counsel also presently represents the Debtor in this bankruptcy case). Considering the high standard of proof Debtor must overcome to disqualify counsel, and the caution enunciated by the above cited courts, this Court cannot find Mr. Savage to be disqualified in this case.

■ Debtor also argues that Mr. Savage purports to represent GRC in this case, but GRC is not listed as a creditor in the Debtor's schedules. Thus, Debtor argues, neither GRC, nor Mr. Savage on GRC's behalf, have standing in this case. In light of the openness in which bankruptcy is intended to operate, this Court is hesitant to disallow any

interested party to become involved in the process. See, for example, 11 U.S.C. § 107(a). Further, as Mr. Savage notes, his representation of GRC manifests itself as a representation of the common interests of its members, who are undoubtedly creditors in this case. Forcing these members to hire counsel individually, or even to bring a new common counsel up to speed, would only disrupt these bankruptcy proceedings while possibly giving the Debtor a tactical advantage.

For all the reasons enunciated above, this Court will deny the Debtor's Motion. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Debtor's Motion to Disqualify Barry E. Savage, Esq. be, and is hereby, *DENIED*.